

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE NOV 19 2015

Madsen, C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00am on NOV. 19, 2015

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner, | ) | No. 90811-7 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| MATTHEW ALEXANDER HAMPTON, | ) | |
| | ) | Filed NOV 19 2015 |
| Respondent. | ) | |

OWENS, J. — On the eve of Matthew Hampton's trial, Hampton moved to replace his appointed counsel with a new private attorney on the condition that the trial be continued so his new counsel could prepare. The trial court denied the continuance, so Hampton proceeded with his previously appointed counsel. He was ultimately convicted of third degree rape. The Court of Appeals reversed his conviction, holding that the trial court's decision violated Hampton's constitutional right to his choice of counsel because it considered Hampton's reasons for wanting a new attorney. *State v. Hampton*, 182 Wn. App. 805, 332 P.3d 1020 (2014). The Court of Appeals relied on a United States Supreme Court opinion that held that when a defendant's right to choice of counsel is erroneously denied, a defendant need not

show prejudice in order to obtain relief. *Id.* at 810 (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006)).

We reverse the Court of Appeals. A trial court has wide latitude to grant or deny a motion to delay trial related to a defendant's request to change counsel. *State v. Aguirre*, 168 Wn.2d 350, 365, 229 P.3d 669 (2010). In making such a decision, trial courts should consider the factual context for the motion, which can include— among other factors—a defendant's reasons for dissatisfaction with existing counsel. The United States Supreme Court explained that its *Gonzalez-Lopez* decision did not affect or undermine its previous rulings to that effect. 548 U.S. at 151. In this case, the trial court did not abuse its discretion when it denied Hampton's request to delay trial to allow him to replace his counsel given that (1) he did not make his request until the day his trial was scheduled to start, (2) his trial had already been continued once, (3) the victim/witness opposed the continuance, and (4) he did not explain his dissatisfaction with appointed counsel.

## FACTS

For an incident that occurred with an 18-year-old female friend of his son, the State charged Hampton with indecent liberties, which charge was later amended to rape in the second degree. His trial was originally set for July 13, 2012, but the parties jointly moved for a continuance until August 31, 2012.

On August 31, 2012, Hampton moved to replace his appointed counsel with a new private attorney. The replacement was contingent on the trial court granting a continuance to allow the new private attorney to prepare for trial. Hampton explained that he had not had a good relationship with his court-appointed counsel and that he had recently obtained funds to hire a private attorney. The State opposed the motion, contending that it was untimely and would delay the trial. The State also indicated that the victim opposed the continuance and that the State had concerns about the defendant interfering with a witness.

The trial judge indicated that she would allow the substitution of counsel but not the continuance. She explained, "I don't think that a compelling record has been made as to why the Court essentially on the day of trial should grant a continuance of a case that has already been continued." Verbatim Report of Proceedings (VRP) (Aug. 31, 2012) at 8. She indicated that Hampton's appointed counsel was "a very capable attorney" and that she was not "being given much reason other than apparently some other source decided to provide the funds today." *Id.* at 7-8. She also noted that the court was being asked to take the victim's position on the continuance into account. She concluded, "I'm not inclined to grant this continuance at this late of stage when there is competent counsel who is prepared to go forward." *Id.* at 9.

Hampton proceeded to trial with his original appointed counsel and was convicted of third degree rape. The Court of Appeals reversed his conviction, holding that the trial court's decision violated Hampton's right to his choice of counsel. *Hampton*, 182 Wn. App. at 825-26. The Court of Appeals relied on *Gonzalez-Lopez* for the proposition that when a trial court is deciding whether to delay trial to allow a defendant to choose different counsel, it cannot consider a defendant's reasons for desiring new counsel. *Id.* at 822 (citing *Gonzalez-Lopez*, 548 U.S. at 144).

The State petitioned for review, which we granted.[1] *State v. Hampton*, 182 Wn.2d 1002, 342 P.3d 327 (2015).

## ISSUE

Did the trial court's decision to deny Hampton's motion for continuance violate Hampton's right to his choice of counsel?

## ANALYSIS

The right to the assistance of counsel under the Sixth Amendment to the United States Constitution generally includes the defendant's right to his or her choice of private counsel. *Aguirre*, 168 Wn.2d at 365. However, a defendant's choice has limitations, particularly when a defendant's desire to choose new counsel affects "the public's interest in the prompt and efficient administration of justice." *Id.* The

---

[1] Hampton cross petitioned for review of a jury instruction on a lesser included charge, but we denied review of that issue.

balancing of a defendant's right to choice of counsel with a trial court's need to efficiently administer justice "falls squarely within the discretion of the trial court." *Id.* The Court of Appeals held that the trial court abused its discretion because it considered, among other factors, Hampton's reasons for desiring new counsel. The Court of Appeals based its decision on a United States Supreme Court case, *Gonzalez-Lopez*. As explained below, that reliance is misplaced. As many other courts have held, *Gonzalez-Lopez* did not affect the factors that a trial court can consider when deciding whether to grant a defendant's request to replace his or her attorney. Thus, we reverse the Court of Appeals and hold that the trial court did not abuse its discretion by considering Hampton's reasons for wanting new counsel.

*1. Overview of the Right to Counsel of Choice*

As part of the Sixth Amendment right to the assistance of counsel, defendants with private attorneys generally have the right to the counsel of their choice. *Id.*; *Gonzalez-Lopez*, 548 U.S. at 144. In contrast, indigent defendants with appointed counsel do not have the right to their counsel of choice. *Gonzalez-Lopez*, 548 U.S. at 151 ("the right to counsel of choice does not extend to defendants who require counsel to be appointed for them"). Instead, indigent defendants can move to substitute counsel when there is an "irreconcilable conflict" with appointed counsel. *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 723-24, 16 P.3d 1 (2001). As noted by the Court of Appeals, that "irreconcilable conflict" standard relates only to defendants

with appointed counsel and does not apply to defendants retaining private attorneys. *Hampton*, 182 Wn. App. at 821 n.13.

However, even for defendants with private attorneys, the right to counsel of choice is not absolute. *Gonzalez-Lopez*, 548 U.S. at 151. For instance, a defendant does not have the right to be represented by a person who is not a licensed attorney. *Id.* at 151-52. Relevant to this case, the United States Supreme Court has explained that one of the basic limits on the right to counsel of choice is "a trial court's wide latitude in balancing the right to counsel of choice . . . against the demands of its calendar." *Id.* at 152. We have characterized that balancing by the trial court as "weigh[ing] the defendant's right to choose his counsel against the public's interest in the prompt and efficient administration of justice." *Aguirre*, 168 Wn.2d at 365. "The resolution of this balancing exercise falls squarely within the discretion of the trial court." *Id.*

This balancing often occurs in cases like this, where a defendant desires new counsel but requires a continuance to do so. The United States Supreme Court has explained that we review a trial court's denial of a continuance to determine whether it was "so arbitrary as to violate due process." *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964). At issue in this case is what factors a trial court can consider when deciding whether to grant a continuance to allow substitution

of counsel and, in particular, whether a trial court can consider a defendant's reasons for wanting a different attorney.

### 2. Factors That Trial Courts Can Consider When Ruling on a Continuance Related to a Defendant's Choice of Counsel

We have not previously addressed what factors a trial court can or should consider when deciding whether to grant a continuance related to a defendant's choice of counsel. As described below, the Court of Appeals previously identified four factors a trial court should consider, but it overruled that precedent in this case. *Hampton*, 182 Wn. App. at 820-24. The Court of Appeals held that two of those previously identified factors conflicted with a subsequent United States Supreme Court case (*Gonzalez-Lopez*) and should no longer be considered by trial courts. *Id.* We reverse the Court of Appeals. Like most other courts that have considered this issue, we hold that *Gonzalez-Lopez* did not limit the factors that trial courts can consider when balancing a defendant's right to choice of counsel and a trial court's need to manage its calendar.

### A. The Court of Appeals' Previously Adopted Four-Factor Roth Test

In 1994, the Court of Appeals reviewed a trial court's denial of a defendant's second motion to continue the trial to allow his lead counsel to be present during jury selection. *State v. Roth*, 75 Wn. App. 808, 823, 881 P.2d 268 (1994). To help it determine whether the trial court had abused its discretion, the Court of Appeals turned to a prominent treatise, *Criminal Procedure,* by Wayne R. LaFave and

7

Jerold H. Israel, which described the wide variety of factors courts have used in making such a determination. *See id.* at 825 (citing 2 WAYNE R. LAFAVE & JEROLD H. ISRAEL, CRIMINAL PROCEDURE § 11.4, at 39-40 (1984)). The treatise listed 11 factors that courts across the country have used. The Court of Appeals noted that four of those factors were present and applicable in that particular case:

> (1) whether the court had granted previous continuances at the defendant's request; (2) whether the defendant had some legitimate cause for dissatisfaction with counsel, even though it fell short of likely incompetent representation; (3) whether available counsel is prepared to go to trial; and (4) whether the denial of the motion is likely to result in identifiable prejudice to the defendant's case of a material or substantial nature.

*Id.* The Court of Appeals concluded that those factors strongly supported the trial court's exercise of discretion and affirmed its ruling. *Id.* at 825-27.

Unfortunately, the *Roth* decision was later interpreted by the Court of Appeals as selecting those four factors as the *only* factors that Washington courts can consider when deciding a defendant's motion to continue the trial based on a desire to seek new private counsel. *State v. Price*, 126 Wn. App. 617, 631-32, 109 P.3d 27 (2005). This decision was an incorrect interpretation of *Roth*. *Roth* noted the 11 factors from Lafave's *Criminal Procedure* but applied only the 4 factors relevant in that case. *Id.* at 632.

B. *The* Gonzalez-Lopez *Decision Did Not Limit the Factors Trial Courts Can Consider When Deciding Choice of Counsel Issues*

In this case, the Court of Appeals concluded that under *Gonzalez-Lopez*, trial courts cannot consider the reasons why a defendant wants to change counsel when evaluating a motion to continue for purposes of replacing counsel. *Hampton*, 182 Wn. App. at 822-23. But in *Gonzalez-Lopez*, the State conceded that the judge had erroneously denied the defendant's right to his choice of counsel when it incorrectly denied his attorney's application for admission pro hac vice. *Gonzalez-Lopez*, 548 U.S. at 143-44. The United States Supreme Court held only that when there is an *erroneous* deprivation of a defendant's right to choice of counsel, the defendant need not make an additional showing of prejudice. *Id.* at 150-52.

However, the Court did not provide any guidance as to how courts should determine when a defendant's right to choice of counsel has been violated. *Id.* 151-52. The Court specifically limited its holding to situations where it has already been determined that the defendant's right to choice of counsel was erroneously denied. *Id.* The Court explained that "[t]his is not a case about a court's power to . . . make scheduling and other decisions that effectively exclude a defendant's first choice of counsel" and that "[n]othing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice." *Id.* at 152, 151. The Court reiterated that a trial court has "wide latitude in balancing the

9

right to counsel of choice against the needs of fairness and against the demands of its calendar." *Id.* at 152 (citation omitted).

Nonetheless, the Court of Appeals in this case interpreted *Gonzalez-Lopez* as limiting the factors that trial courts can consider when determining whether to grant a continuance related to a defendant's choice of counsel. Specifically, the Court of Appeals held that two of the four *Roth* factors were "incompatible" with *Gonzalez-Lopez*. *Hampton*, 182 Wn. App. at 822. The Court of Appeals held that after *Gonzalez-Lopez*, trial courts cannot consider whether the defendant has a legitimate dissatisfaction with appointed counsel nor whether the denial of the defendant's motion will likely result in material or substantial prejudice. *Id.* The Court of Appeals held that considering either factor would conflict with the statements in *Gonzalez-Lopez* that a defendant has the right to be defended by counsel that "'he believes to be best.'" *Id.* at 823 (emphasis omitted) (quoting *Gonzalez-Lopez*, 548 U.S. at 146).

The Court of Appeals' interpretation of *Gonzalez-Lopez* was overbroad. The *Gonzalez-Lopez* Court explicitly stated that it was not ruling on a court's power to make scheduling decisions that affect a defendant's choice of counsel and that its ruling did not "*cast*[] *any doubt* or *place*[] *any qualification*" on previous holdings that limited the right to counsel of choice, including a trial court's wide latitude in balancing the right to counsel of choice against the demands of its calendar. 548 U.S.

at 151-52 (emphasis added). *Gonzalez-Lopez* addressed whether a defendant must additionally show prejudice once it has already been established that his or her right to choice of counsel was "*wrongfully* denied." *Id.* at 150 (emphasis added). The Court explained that it was not addressing how to determine when a person's denial of counsel of choice was erroneous or what factors courts can consider when deciding a choice of counsel issue.

As described below, we agree with the many courts that have continued to consider the factors that the Court of Appeals believed were incompatible with *Gonzalez-Lopez*, including the Seventh, Eighth, and Tenth Circuit Courts of Appeals.

The Tenth Circuit Court of Appeals has directly addressed *Gonzalez-Lopez*'s impact and held that it applies only if the continuance was "'wrongly denied.'" *United States v. Flanders*, 491 F.3d 1197, 1216 (10th Cir. 2007) (quoting *Gonzalez-Lopez*, 548 U.S. at 148, and citing cases from other jurisdictions that had come to the same conclusion). The court then continued to apply the same pre-*Gonzalez-Lopez* factors to determine whether a continuance was wrongly denied, including whether "rejecting the request would materially prejudice or substantially harm the defendant's case." *Id.*

Similarly, the Seventh Circuit Court of Appeals recently rejected a defendant's argument that a trial judge had inappropriately focused on the competence of his public defender when evaluating a motion to continue to allow the defendant to

substitute a new private attorney. *United States v. Sinclair*, 770 F.3d 1148, 1156 (7th

Cir. 2014), *cert. denied*, No. 14-9255 (U.S. Nov. 2, 2015). In fact, the *Sinclair* court

held that it was often important for the trial court to inquire into the reasons that a

defendant desired a new attorney so that the court could properly weigh all of the

factors and determine whether to grant the continuance. *Id.* The court noted that it

had previously found that a trial court had abused its discretion by *not* considering the

reasons for the defendant's dissatisfaction with appointed counsel, including that

appointed counsel was unprepared for trial and that all communication between the

appointed counsel and the defendant had broken down. *Id.* (citing *United States v.

Sellers*, 645 F.3d 830, 838-39 (7th Cir. 2011)).

The Eighth Circuit Court of Appeals has come to the conclusion that even after

*Gonzalez-Lopez*, trial judges can take into consideration a defendant's dissatisfaction

with his appointed attorney and how promptly he reports that dissatisfaction. *United

States v. Cordy*, 560 F.3d 808, 815-16 (8th Cir. 2009) (noting that the defendant's

"dissatisfaction with counsel was neither sudden nor unforeseeable" and affirming the

trial court's denial of a continuance to allow the defendant's newly retained attorney

to prepare).

The Ninth Circuit Court of Appeals has similarly recognized that trial courts

have wide latitude in balancing the rights of defendants to choose their own counsel

with the demands of the court's calendar. *See, e.g., United States v. Brown*, 785 F.3d

1337, 1347-50 (9th Cir. 2015) (holding that a district court abused its discretion in part because the record did not indicate that the trial court denied the defendant's motion because of the demands of its calendar); *Miller v. Blacketter*, 525 F.3d 890, 896-98 (9th Cir. 2008) (holding that trial judges should inquire into problems between a defendant and appointed counsel and consider the appointed counsel's ability to provide effective representation when deciding whether to grant a continuance to allow the defendant to obtain a new, private attorney).

Those courts are correct. The United States Supreme Court *expressly stated* in *Gonzalez-Lopez* that its decision did not limit a trial court's ability to balance a defendant's right to choice of counsel with the public's interest in the prompt and efficient administration of justice. 548 U.S. at 151-52. We accept those statements by the United States Supreme Court limiting the scope of its own holding.

*C. Factors for Washington Trial Courts To Consider Going Forward*

As explained above, the Court of Appeals' adoption of a four-factor test was based on an erroneous interpretation of *Roth*, which identified and applied only the four factors that applied *in the specific factual circumstances of that case*. The Court of Appeals now rejects two of those factors based on an erroneous interpretation of *Gonzalez-Lopez*. In light of these issues, we realize it would be helpful to trial courts to provide guidance on what factors *can* be considered when deciding a motion to continue for the purposes of substituting counsel. We have previously indicated that

13

these decisions require a trial court to "weigh the defendant's right to choose his counsel against the public's interest in the prompt and efficient administration of justice." *Aguirre*, 168 Wn.2d at 365. As the United States Supreme Court has observed, these situations are highly fact dependent and "[t]here are no mechanical tests" that can be used. *Ungar*, 376 U.S. at 589. Instead, the judge must decide based on "the circumstances present." *Id.* Therefore, we hold that trial courts can consider all relevant information, including the 11 factors described in the most recent edition of the LaFave *Criminal Procedure* treatise:

(1) whether the request came at a point sufficiently in advance of trial to permit the trial court to readily adjust its calendar;

(2) the length of the continuance requested;

(3) whether the continuance would carry the trial date beyond the period specified in the state speedy trial act;

(4) whether the court had granted previous continuances at the defendant's request;

(5) whether the continuance would seriously inconvenience the witnesses;

(6) whether the continuance request was made promptly after the defendant first became aware of the grounds advanced for discharging his or her counsel;

(7) whether the defendant's own negligence placed him or her in a situation where he or she needed a continuance to obtain new counsel;

(8) whether the defendant had some legitimate cause for dissatisfaction with counsel, even though it fell short of likely incompetent representation;

(9) whether there was a "rational basis" for believing that the defendant was seeking to change counsel "primarily for the purpose of delay";

14

(10) whether the current counsel was prepared to go to trial;

(11) whether denial of the motion was likely to result in identifiable prejudice to the defendant's case of a material or substantial nature.

3 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 11.4(c) at 718-20 (3d ed. 2007). Not all factors will be present in all cases, and thus a trial court need not evaluate every factor in every case, but we will not prohibit a trial court from considering relevant information.

### D. The Trial Court in This Case Did Not Abuse Its Discretion

Hampton contends that the trial court abused its discretion when it denied his motion for a continuance to allow his newly retained private attorney to prepare for trial. As described above, we review such decisions for abuse of discretion. *Aguirre*, 168 Wn.2d at 365. A trial court abuses its discretion when its decision "is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993); *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard." *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003) (quoting *State v. Rundquist*, 79 Wn. App. 786, 793, 905 P.2d 922 (1995)). "A decision is 'manifestly unreasonable' if the court, despite applying the correct legal standard to the supported facts, adopts a view 'that no reasonable

15

person would take,' and arrives at a decision 'outside the range of acceptable choices.'" *Id.* (citation omitted) (quoting *State v. Lewis*, 115 Wn.2d 294, 298-99, 797 P.2d 1141 (1990); *Rundquist*, 79 Wn. App. at 793).

In this case, the trial court did not actually apply the four-factor *Roth* test (nor was *Roth* or *Price* cited to the trial court by trial counsel). However, it did consider, among other factors, the readiness of Hampton's existing counsel, as evidenced by its statement, "I'm not inclined to grant this continuance at this late of stage when there is competent counsel who is prepared to go forward." VRP (Aug. 31, 2012) at 9. The trial court also appeared to consider whether Hampton's desire for different counsel was justified, noting:

> I know [the appointed defense counsel] is a very capable attorney. It wouldn't be the first time he's represented someone who may not have always been happy with [him]. I think that happens for most of the defense attorneys that they occasionally have a client who would rather have a different attorney appointed. I don't think that would in any way impair his ability to represent his client zealously and capably, and I don't think there's any question that [the appointed defense counsel] is a highly qualified criminal defense attorney.

*Id.* at 7-8. As described above, the *Gonzalez-Lopez* decision does not prohibit trial courts from considering a defendant's reasons for desiring a different attorney or other relevant factors when considering a motion to continue for purposes of replacing counsel. Other courts considering the issue have come to that same conclusion. The trial court in this case did not err by considering the defendant's reasons for dissatisfaction with his appointed attorney in addition to the other circumstances, such

16

as the lateness of the request, the previous continuance granted by the court, and the victim/witness's opposition to further delay. The decision was within the discretion of the trial court, and we affirm.

## CONCLUSION

We reverse the Court of Appeals and hold that when ruling on a motion to continue trial for purposes of substituting defense counsel, the trial court did not abuse its discretion when it considered—among other factors—the defendant's reasons for his dissatisfaction with his appointed counsel.

*State v. Hampton*
No. 90811-7

Owens, J.

WE CONCUR:

Madsen, C.J.

Wiggins, J.

Gonzalez, J.

Fairhurst, J.

Stephens, J.

Yu, J.

18

No. 90811-7

GORDON McCLOUD, J. (dissenting)—"[T]he Sixth Amendment right to counsel of choice. . . . commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006); U.S. CONST. amend. VI. This right to retain counsel of choice is distinct from the Sixth Amendment right to effective assistance of counsel:

> Deprivation of the right [to retain counsel of choice] is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received. To argue otherwise is to confuse the right to counsel of choice—which is the right to a particular lawyer regardless of comparative effectiveness—with the right to effective counsel— which imposes a baseline requirement of competence on whatever lawyer is chosen or appointed.

*Gonzalez-Lopez*, 548 U.S. at 148. The majority conflates these two rights by upholding the trial court's decision to deny counsel of choice based largely on its impression of the quality of the public defender's representation and by adopting a list of factors that permits trial courts to consider this in the future. Because I agree

1

with the United States Supreme Court that the constitutional right to counsel of choice applies separately from and in addition to the right to effective assistance of counsel, I respectfully dissent.

ANALYSIS

The Sixth Amendment to the United States Constitution guarantees the right to retained counsel of choice. In fact, the Supreme Court originally understood the Sixth Amendment right to counsel of choice as a guaranty of the right to *retain* counsel, rather than a right to gain appointed counsel. *See generally Bute v. Illinois*, 333 U.S. 640, 660-66, 68 S. Ct. 763, 92 L. Ed. 986 (1948); *Betts v. Brady*, 316 U.S. 455, 468, 62 S. Ct. 1252, 86 L. Ed. 1595 (1942), *overruled on other grounds by Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). When the Court recognized the latter right in 1932, it regarded the creation of that right not as the primary purpose of the Sixth Amendment, but as "a logical corollary from the constitutional right to be heard by counsel." *Powell v. Alabama*, 287 U.S. 45, 72, 53 S. Ct. 55, 77 L. Ed. 158 (1932). Thus, a defendant who retains his own attorney has a right to the lawyer that he chooses. *Gonzalez-Lopez*, 548 U.S. at 147-48 ("The right to select counsel of one's choice . . . has been regarded as the root meaning of the [Sixth Amendment's] constitutional guarantee."); *State*

*v. Aguirre*, 168 Wn.2d 350, 365, 229 P.3d 669 (2010) (citing *State v. Roth*, 75 Wn. App. 808, 824, 881 P.2d 268 (1994)).

To be sure, there are some limits on this right. A defendant who retains counsel has no right to representation that he or she cannot afford, representation by someone who declines to represent him or her, or representation by someone who has an actual or serious potential for conflict of interest. *Wheat v. United States*, 486 U.S. 153, 158, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988); *Aguirre*, 168 Wn.2d at 365 (citing *Roth*, 75 Wn. App. at 824; *State v. Roberts*, 142 Wn.2d 471, 516, 14 P.3d 713 (2000)).

But providing appointed counsel does not satisfy the right to retain counsel of choice. *See United States v. Unit No. 7 & Unit No. 8*, 853 F.2d 1445, 1451 (8th Cir. 1988) ("[W]e reject the government's argument that even if its action should push Kiser into indigency, the Sixth Amendment would be fully vindicated by offering him appointed counsel. . . . This is an extraordinarily impoverished view of the non-indigent's right. In essence it collapses the two distinct rights into one, the lesser."), *rev'd*, 890 F.2d 82 (8th Cir. 1989).

We must therefore review the denial of a motion for a continuance that effectively denies a defendant the right to retain counsel of choice against this backdrop. *Aguirre*, 168 Wn.2d at 365 (citing *State v. Chase*, 59 Wn. App. 501,

506, 799 P.2d 272 (1990)). When ruling on a motion for a continuance, "the trial court must weigh the defendant's right to choose his counsel against the public's interest in the prompt and efficient administration of justice." *Id.* (citing *Roth*, 75 Wn. App. at 824-25). Trial courts certainly exercise discretion when making such decisions on continuances sought to obtain new counsel.

Following *Gonzalez-Lopez*, however, the fundamental constitutional right to retain counsel of choice does not balance equally with other rules and inconveniences. Otherwise, *Gonzalez-Lopez* would likely have lost his appeal: the trial court rejected his chosen counsel's motion for admission pro hac vice to enforce its interpretation of a local rule. Instead, *Gonzalez-Lopez* won.

The majority's new 11-factor rule conflicts with *Gonzalez-Lopez*. The majority holds that a trial court "can consider all relevant information, *including the 11 factors described in the most recent edition* of the LaFave *Criminal Procedure* treatise" when ruling on a motion for a continuance to permit a defendant's preferred counsel to prepare. Majority at 14 (emphasis added); 3 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 11.4(c) at 718-20 (3d ed. 2007). But LaFave's factors 6, 8, 10, and 11 overvalue the right to appointed counsel at the expense of the right to retained counsel and therefore violate the rule that the right to appointed counsel is a corollary of the Constitution's principal

4

right to retain counsel of choice. Additionally, LaFave's "convenience" factors 1, 3, and 4 are incomplete unless we combine them with the rule that slight inconvenience alone cannot outweigh the fundamental constitutional right to retain counsel of choice.

The trial court in this case committed both errors. First, the trial court improperly focused on the public defender's qualifications and ability to represent Hampton, which were irrelevant to Hampton's right to retain his own attorney under the Supreme Court's holding in *Gonzalez-Lopez*. In denying retained counsel's request for a continuance, the trial court stated,

> I know [appointed counsel] is a very capable attorney. It wouldn't be the first time he's represented someone who may not have always been happy with [appointed counsel]. I think that happens for most of the defense attorneys that they occasionally have a client who would rather have a different attorney appointed. I don't think that would in any way impair his ability to represent his client zealously and capably, and I don't think there's any question that [appointed counsel] is a highly qualified criminal defense attorney.

Verbatim Report of Proceedings (VRP) (Aug. 31, 2012) at 7-8.[1]

---

[1] Although I think that this constitutes error, I certainly understand that the trial court followed prior Washington precedent in its approach. In both *Roth*, 75 Wn. App. at 825, and *State v. Price*, 126 Wn. App. 617, 632, 109 P.3d 27 (2005), the Court of Appeals held that a trial court *may* inquire about the legitimacy of the defendant's satisfaction with appointed counsel and whether the denial of the defendant's motion will result in material or substantial prejudice.

Second, the trial court relied on the fact that a continuance would be inconvenient, even though the court never determined the length of the requested continuance and it granted the public defender a short continuance while denying the same accommodation to retained counsel. Nothing in the record shows the length of the requested continuance, whether it would be longer than the continuance the trial court gave to appointed counsel, whether witnesses or victims could adjust to a shorter continuance, or whether a continuance would interfere with the court's calendar. In fact, both parties had agreed to the court's only prior continuance and fewer than four months passed between Hampton's arraignment and the hearing on his motions. The only concern that the trial court expressed about its calendar was that "we have a lot of cases that are even older," VRP (Aug. 31, 2012) at 8, which seems irreconcilable with the notion that continuing Hampton's case would cause unusual or undue delay.

To support its argument that a trial court can evaluate the defendant's dissatisfaction with an attorney and abbreviate its inquiry into the length of the requested continuance when ruling on a motion to continue, the majority cites the Ninth Circuit's decision in *United States v. Brown*, 785 F.3d 1337 (9th Cir. 2015). The majority asserts that *Brown* holds, "[T]rial courts have wide latitude in

balancing the rights of defendants to choose their own counsel with the demands of the court's calendar." Majority at 12.

That case, however, actually rejected the majority's broad holding and instead endorses the rule that the constitutional right to counsel of choice weighs very heavily in the balance. In *Brown*, the district court denied retained counsel's motion to withdraw to permit the defendant to obtain a public defender, who would have required a continuance to prepare for trial. 785 F.3d at 1341-43. The Ninth Circuit reversed, criticizing the district court for "focus[ing] on considerations pertinent to the right to constitutionally adequate counsel, rather than to the right to choice of counsel Brown actually enjoyed." *Id.* at 1347. The Ninth Circuit then held, in contrast to the majority's holding here, "Brown's *reasons* for wanting to discharge his retained lawyer were not properly the court's concern at all." *Id.* at 1348. Additionally, the Ninth Circuit in *Brown* cited three indications that the trial court did not deny the motion to discharge counsel because of the demands of its calendar: (1) the court did not indicate that it denied the motion because of concern for its calendar, (2) the court offered to continue the case for the retained attorney for "'whatever time he need[ed] before we finally go to trial,'" and continued the trial for one month after the hearing, and (3) the court never determined how long a continuance would be necessary to allow Brown's newly appointed attorney to

7

prepare. *Id.* at 1349 (alteration in original). Finally, nothing in the record showed that it would be unfair to grant the motion. *Id.* at 1350. The Ninth Circuit concluded that the erroneous denial of the defendant's right to counsel of choice constituted structural error. *Id.*

The same analysis leads to the conclusion that the trial court improperly denied the right to counsel of choice here. In denying the continuance in this case, the trial court also failed to determine the length of the requested continuance, continued the case for a few days for the lawyer already on the case, and made no finding about inability to accommodate any further continuance. The trial court in this case also cited the appointed attorney's readiness and qualifications and stated, "I'm not really being given much reason other than apparently some other source decided to provide the funds today when it was still a serious case." VRP (Aug. 31, 2012) at 8. But under *Brown*—and *Gonzalez-Lopez*—that's all that is relevant; the trial court's satisfaction with existing counsel is not. Other courts following Gonzalez-Lopez have reached the same conclusion in the same context. *E.g.*, *People v. Brown*, 2014 CO 25, ¶ 2, 322 P.3d 214 (2014) (when deciding whether to grant a continuance to allow a defendant to change counsel, trial court must conduct a multifactor balancing test and assess whether the public's interest in the efficiency and integrity of the judicial system outweighs the defendant's right to

counsel of choice; remand for trial court to make findings about factors court should have considered, including how long it would take retained counsel to prepare for trial, length of any requested continuance, and the court's docket and whether the continuance would cause significant inconvenience for witnesses).

A trial court abuses its discretion when it bases its ruling on an erroneous view of the law or applies the wrong legal standard. *State v. Rafay,* 167 Wn.2d 644, 655, 222 P.3d 86 (2009). The trial court applied the wrong legal standard, and therefore abused its discretion, when it considered Hampton's appointed lawyer's positive performance and failed to assess or even ascertain the length of the continuance requested, or whether such a continuance would cause undue delay. This improper denial of Hampton's request for a continuance denied him his right to retain his chosen attorney. This erroneous deprivation of the right to counsel of choice constitutes structural error requiring automatic reversal. *Gonzalez-Lopez,* 548 U.S. at 149-50 (citing *Sullivan v. Louisiana,* 508 U.S. 275, 282, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993)).

## CONCLUSION

*Gonzalez-Lopez* makes clear that the right to retain counsel of choice is fundamental, constitutional, and weighty. It also prohibits trial courts from evaluating the defendant's satisfaction with his appointed attorney when ruling on

a continuance to retain counsel of choice. The trial court and the majority here, however, do exactly that. The majority compounds the error by adopting a test that (1) instructs trial courts to continue considering appointed counsel's positive performance when deciding whether to grant a continuance to retain counsel of choice and (2) fails to clarify that slight inconvenience cannot outweigh the right to retain counsel of choice. I therefore respectfully dissent.

Gordon McCloud, J.