# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>ALEJANDRO PEÑA SALVADOR,<br><br>Petitioner | No. 84552-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — In this personal restraint petition (PRP), Alejandro Peña Salvador challenges his criminal conviction under the Sixth Amendment to the United States Constitution, arguing (1) the court in the criminal case erred by denying his request shortly before trial to replace his retained counsel with appointed counsel, and (2) his appellate counsel provided ineffective assistance by failing to raise this issue in his appeal from the criminal judgment. We deny the petition.

I

Peña Salvador was convicted in 2020 of one count of first degree child molestation, two counts of second degree rape of a child, and one count of third degree child molestation. He appealed those convictions to this court. We affirmed his convictions. State v. Peña Salvador, 17 Wn. App. 2d 769, 487 P.3d 923 (2021), overruled in part by State v. Talbott, 200 Wn.2d 731, 521 P.3d 948 (2022). Peña Salvador timely filed this PRP on October 7, 2022.

Peña Salvador's first scheduled trial date was December 27, 2018. On December 7, 2018, Peña Salvador's court appointed lawyer filed a notice of withdrawal and substitution, with appointed counsel Jennifer Symms taking over

Peña Salvador's defense. Symms requested and received seven continuances of the trial date. This continued the trial date to October 2, 2019. On September 4, 2019, Peña Salvador moved to substitute for Symms privately retained counsel Vicky Currie.

At the hearing on the motion to substitute, the prosecutor told the court, "the State's only concern is that this case has—the original trial date in this case was December 2018," and "[t]here has been significant work done on the case." The prosecutor expressed concern that "this is simply a substitution for negotiation purposes," and emphasized that "[t]he State . . . is preparing for trial. The State just wants to be clear on that." Though the prosecutor did not object to brief continuances "for counsel to come up to speed," she again emphasized, "the posture of this case right now, is preparing for trial."

The court turned to Currie and had the following exchange in which Currie affirmed her intention to prepare the matter for trial:

> THE COURT: Are you ready for trial—to proceed to trial on October 2nd?
>
> MS. CURRIE: I do not have any of the discovery, but I will certainly be working to be prepared, Your Honor.
>
> . . . .
>
> THE COURT: Okay, I just want us to have a clear understanding whether you're—*this case is going to go to trial sometime this year.*
>
> MS. CURRIE: Understood, Your Honor.

THE COURT: And note that your client on at least—Ms. Symms' current client, on at least three occasions, has objected to a continuance of the trial date. So have you—I want to know, have you talked with him, and what is your sort of tentative plan of what you're hoping to do with the trial date. Planning to get ready and proceed on the 2nd? Are you hoping for a week or two continuance, or what is your desire?

MS. CURRIE: *Possibly a week or two continuance to come up to speed, but it is our intention to go to trial.*

THE COURT: Okay, all right. *Well with that understanding, that it's going to trial soon*—and I hear you saying you've got some work ahead of you, but you're prepared to do that to get ready, is that right?

MS. CURRIE: That's correct, Your Honor.

THE COURT: Okay. Then I'll grant the motion to substitute.

(Emphasis added.) The hearing ended without Peña Salvador, Symms, or Currie giving any suggestion that Currie's representation might be limited in scope.

Currie subsequently requested and received three continuances. At the first continuance hearing, to move the trial date from October 2 to October 28, the court again reinforced the importance of expediency, "I know I noted this last time, just to make sure everyone has this on the radar screen as they approach [the] holiday season and leave and so forth, this case is going to trial this year. So please plan accordingly, okay?" The next two continuances continued the trial date to January 13, 2020.

Currie drafted a notice of withdrawal, ostensibly signed December 30, 2019, planning withdrawal "due to a contractual breakdown." She declared that she "was originally hired and retained only to see how [Peña Salvador's] criminal charges would negatively affect his Immigration Proceedings and to help [Peña Salvador]

3

reach a plea deal with the Prosecution." With Peña Salvador having decided to take the case to trial, and with "the party who was paying for [his] legal representation . . . no longer willing to pay his legal fees," Currie wished to withdraw in favor of court appointed counsel.

Peña Salvador drafted a pro se motion for substitution and appointment of counsel, ostensibly dated December 31, 2019. Peña Salvador, a native Spanish speaker, requested a Spanish speaking lawyer with whom he could communicate. Of Currie, he wrote, "I haven't been able to communicate or understand each other because I can[']t understand or speak English and I[']ve noticed she's not doing anymore investigation work on my case because she wasn't hired and that she isn't getting paid." He also wrote of a December 18 meeting that he felt Currie and the prosecutor were conspiring, that he felt "very pressured," and that he did not "feel ready to take the next step and to continue [his] case and to make a decision." At that meeting, Currie, the prosecutor, and the prosecutor's interpreter had visited Peña Salvador in the jail.

The first indication of Currie's intent to withdraw given to the court was by oral representation at a hearing on January 3, 2020. However, the issue was not discussed at that hearing. The December 30 and 31, 2019 documents were first seen by the trial court judge at a hearing on January 7, 2020. Currie told the court she was "originally hired to check into [Peña Salvador's] immigration . . . status," was retained "only for that purpose," and after being hired she began plea negotiations.

4

The court then questioned Peña Salvador, through an interpreter, about the motions:

> THE COURT: I have your written motion, and of course I've heard from Ms. Currie. Is there additional information that you would like to tell me this morning?
>
> THE DEFENDANT: Yes.
>
> I am asking if I can have a new attorney, because I haven't had understanding in my language. And I did have a different attorney previously, but I didn't have so much understanding of what he was telling me. And the interpreter that they brought another time said the words that—that weren't right, but—
>
> THE COURT: Okay.
>
> I can't guarantee that if I appointed an attorney that that attorney would be able to speak to you in Spanish himself or herself. You may have to depend on an interpreter. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Thank you.

The court then questioned the prosecutor, who told the court, "[this case] has been set for trial for a significant period of time. I have personally had this case for over a year on the trial calendar." The prosecutor reiterated that the State had held the position that it would not negotiate the case and the record showed its plans for trial since Currie appeared. Of the motion, the prosecutor said, "My concern at this time is further delays. The state is ready to proceed to trial on this case. There are two victims who have been interviewed, and this case has been ready to go for a significant period of time."

The court questioned Currie about her reasons for withdrawing:

> THE COURT: . . . Ms. Currie, anything else you want to add?

MS. CURRIE: Yes, Your Honor.

Given the motion that [Peña Salvador] filed today, I think it is impossible for me to continue representing him. He's basically accusing [the prosecutor] and I of conspiring and pressuring him to plead guilty, and that is not the case. I think there is a clear conflict of interest here, and I would ask to be discharged.

THE COURT: You believe there is a conflict based on what he has stated?

MS. CURRIE: Actual conflict, yes, Your Honor.

He believes that because of the meeting that we had with him, [the prosecutor], an interpreter and I, only to explain the offer, he basically feels that we are—that there's a conspiracy amongst me and [the prosecutor], and we're trying to pressure him, and he's— each time I've met with him, except maybe once or twice, I've had an interpreter present. When he's called my office, I have an interpreter present, and I have not attempted to communicate any offers to him in any language other than Spanish.

And so, he feels that he wants someone to represent him that can better communicate with him, and I ask the court to please allow me to withdraw.

The court turned to the defendant, "Mr. [Peña-Salvador], anything further that you want to say?" And he replied, "No, it's fine." The court denied the request to substitute counsel, ruling,

This case has been set for trial for a lengthy period of time. The trial date was continued at least three times over [Peña Salvador]'s objection over the summer as Counsel attempted to prepare for trial—prepare the case for trial.

When Ms. Currie came on the case in September 2019, substituting for Ms. Sims [sic], we had a clear discussion about the fact that the case would most likely go to trial in 2019. Ms. Currie was clear that she understood that at the time. And now, we have a trial date of January 13th, 2020.

The case law is pretty clear that Defense Counsel and the Defendant don't need to see eye to eye on every issue to continue

6

the relationship. I find that both Ms. Currie's—both in regard to Ms. Currie's motion to withdraw and [Peña Salvador]'s motion to change counsel that it would not be appropriate to grant either motion at this stage, six days from the trial date, given the history of the case and the attorneys that [Peña Salvador] has had in the case.

Under the applicable case law, I find that there is not a conflict that requires appointment of new counsel. The motions today to withdraw and appoint new counsel are denied.

After another delay, trial began on January 21, 2020. The issue of Currie's representation was not raised again at trial. On February 11, 2020, the jury returned guilty verdicts for each charge against Peña Salvador.

Peña Salvador was represented by appellate counsel during his appeal. On appeal, Peña Salvador challenged the trial court's denial of his request to excuse an allegedly biased juror for cause, challenged three community custody conditions, and requested that a scrivener's error in his judgment be corrected. Peña Salvador, 17 Wn. App. 2d at 772. He did not raise any issues with Currie's representation or the trial court's denial of his motion to substitute counsel. Peña Salvador's appellate counsel signed a statement[1] that during her representation, Peña Salvador raised concerns about his trial counsel. Appellate counsel stated she "was also concerned about defense counsel's performance." But appellate counsel did not raise the issue on appeal because she "did not believe the existing record on appeal demonstrated an attorney-client conflict or conflict of interest such that the Court of Appeals would find there was an abuse of discretion in denying the motion." This court affirmed Peña Salvador's convictions. Peña Salvador, 17 Wn. App. 2d at 793.

_____

[1] The statement is not signed under penalty of perjury in compliance with RCW 5.50.050.

7

Peña Salvador timely filed this PRP. Pursuant to RAP 16.11(b), the Chief Judge partially dismissed Peña Salvador's PRP and referred to the panel his claims "that the trial court erred in denying his motion to appoint new counsel and that his appellate counsel provided ineffective assistance by failing to raise that claim on appeal."

II

"Society has a significant interest in the finality of criminal convictions. This is why collateral attacks on convictions made through a PRP are allowed only in 'extraordinary circumstances.' " In re Pers. Restraint of Kennedy, 200 Wn.2d 1, 12, 513 P.3d 769 (2022) (quoting In re Pers. Restraint of Coats, 173 Wn.2d 123, 132, 267 P.3d 324 (2011)). The importance of finality means that " '[t]he bar facing a petitioner is high, and overcoming it is necessary before this court will disturb a settled judgment.' " Id. (alteration in original) (quoting In re Pers. Restraint of Fero, 190 Wn.2d 1, 14-15, 409 P.3d 214 (2018)). To obtain relief through a PRP, "a petitioner must make a heightened showing of 'actual and substantial prejudice' for a constitutional error or 'a complete miscarriage of justice' for a nonconstitutional error." Id. (internal quotation marks omitted) (quoting In re. Pers. Restraint of Light-Roth, 191 Wn.2d 328, 333, 422 P.3d 444 (2018)). To show actual and substantial prejudice, "a petitioner must show that the outcome would more likely than not have been different had the alleged error not occurred." In re Pers. Restraint of Davis, 200 Wn.2d 75, 86, 514 P.3d 653 (2022).

III

Peña Salvador argues that the criminal court violated his Sixth Amendment rights by denying his request presented in January 2020 to substitute Currie with appointed counsel.  We disagree.

A

The Sixth Amendment provides a criminal defendant who does not require appointed counsel the right "to choose who will represent him."  United States v. Gonzalez-Lopez, 548 U.S. 140, 144, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). United States v. Brown held this to mean that "(1) [a] defendant enjoys a right to discharge his retained counsel for any reason 'unless a contrary result is compelled by purposes inherent in the fair, efficient and orderly administration of justice,' and (2) if the court allows a defendant to discharge his retained counsel, and the defendant is financially qualified, the court must appoint new counsel for him."  785 F.3d 1337, 1340 (9th Cir. 2015) (citation omitted) (internal quotation marks omitted) (quoting United States v. Rivera-Corona, 618 F.3d 976, 979 (9th Cir. 2010)); see also People v. Ortiz, 51 Cal. 3d 975, 984, 987, 800 P.2d 547 (1990) (criminal defendants have right to discharge retained counsel so long as it is exercised timely and does not disrupt the orderly process of justice); Ronquillo v. People, 2017 CO 99, ¶ 23, 404 P.3d 264, 269 (Colo. 2017) (motions to dismiss retained counsel should be granted except when it "would 'interfere with the fair, orderly and effective administration of the courts.' "  (internal quotation marks omitted) (quoting U.S. v. Jimenez-Antunez, 820 F.3d 1267, 1272 (11th Circ.

2016)).  These decisions describe a right to discharge retained counsel "for any reason or no reason."  Rivera-Corona, 618 F.3d at 979-80.

The same decisions clarify that "the right to counsel of choice 'is circumscribed in several important respects.' "  Gonzalez-Lopez, 548 U.S. at 144 (quoting Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988)).  Peña Salvador's motion sought to substitute court appointed counsel for his privately retained counsel.  A criminal defendant relying on government appointed counsel, as Peña Salvador was requesting, has a right only to effective assistance and no right to select his appointed counsel.  Gonzalez-Lopez, 548 U.S. at 151.  Peña Salvador therefore focuses on the fact his motion was in effect also a request to discharge his retained lawyer.  But even in this posture the trial court had discretion to balance Peña Salvador's right against the public's interest in the prompt and efficient administration of justice.  A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar."[2]  Id. at 152 (citation omitted).

---

[2] Courts have used generally similar language to describe the institutional interests serving as counterweight to a defendant's assertion of a Sixth Amendment right to discharge or substitute counsel.  Gonzalez-Lopez, 548 U.S. at 152 (a trial court has a "wide latitude in balancing the right to counsel of choice against *the needs of fairness* and against *the demands of its calendar*" (emphasis added) (citations omitted)); State v. Aguirre, 168 Wn.2d 350, 365-66, 229 P.3d 669 (2010) ("the trial court must weigh the defendant's right to choose his counsel against *the public's interest in the prompt and efficient administration of justice*" (emphasis added)); Brown, 785 F.3d at 1350 (trial courts should grant motions to discharge retained counsel unless doing so "would pose impediment to *the 'fair, efficient and orderly administration of justice*' " (emphasis added) (quoting Rivera-Corona, 618 F.3d at 979)); Rivera-Corona, 618 F.3d at 979 ("a defendant who can afford to hire counsel may have the counsel of his choice unless a contrary result is compelled by '*purposes inherent in the fair, efficient and orderly administration of justice*' " (emphasis added) (quoting United States v. Ensign, 491 F.3d 1109,

In the context of deciding what factors are relevant to weighing whether to continue trial to permit substitution of counsel, State v. Hampton held that the defendant's choice of counsel

> has limitations, particularly when a defendant's desire to choose new counsel affects "the public's interest in the prompt and efficient administration of justice." The balancing of a defendant's right to choice of counsel with a trial court's need to efficiently administer justice "falls squarely within the discretion of the trial court."

184 Wn.2d 656, 660, 662, 361 P.3d 734 (2015) (citation omitted) (quoting State v. Aguirre, 168 Wn.2d 350, 365, 229 P.3d 669 (2010)). Hampton's list of factors relevant to a continuance, 184 Wn.2d at 669 (factors (1), (2), and (4)), is informative of the "needs of fairness," id. at 666, and the "demands of [the court's] calendar," id. at 663, that may be weighed against a criminal defendant's assertion of his right to counsel of choice under Gonzalez-Lopez. Relevant here are the timeliness of the request, the anticipated delay, and the history of previous continuances. Here, the trial court's denial of Peña Salvador's request was within the trial court's wide latitude.

---

1115 (9th Cir. 2007)); Ortiz, 51 Cal.3d at 983-984 ("the 'fair opportunity' to secure counsel of choice provided by the Sixth Amendment 'is necessarily [limited by] the countervailing state interest . . . in proceeding with prosecutions on *an orderly and expeditious basis, taking into account the practical difficulties of assembling the witnesses, lawyers, and jurors at the same place at the same time*'" (emphasis added) (alteration in original) (quoting Sampley v. Att'y Gen. of N.C., 786 F.2d 610, 613 (4th Cir. 1986)); Ronquillo, 2017 CO at ¶ 35 ("the right to counsel of choice is not absolute and must sometimes give way to '*the demands of fairness and efficiency*'"(emphasis added) (quoting People v. Brown, 2014 CO 25, ¶ 20, 322 P.3d 214, 219 (2014)).

Peña Salvador's trial was originally scheduled for December 27, 2018. Ten continuances[3] and two substitutions of counsel later, trial was scheduled for January 13, 2020. The court received the motion to substitute counsel on January 7, six days before the scheduled trial date. In the trial court's ruling, it cited the "lengthy period of time" that the case had been set for trial, the history of continuances, and the impending trial date. The court summed up its reasoning, "it would not be appropriate to grant either motion at this stage, six days from the trial date, given the history of the case and the attorneys that [Peña Salvador] has had in the case."

Had the trial court granted the motion, another continuance likely would have been required. Peña Salvador faced serious felony sex crime charges which carried sentencing ranges up to life imprisonment. The facts of the case were complex, with multiple victims alleging sexual abuse that spanned a period from 2009 to 2015. Moreover, as Currie implicitly indicated, the charges carried potentially significant immigration consequences. That added complexity would have been an additional burden on any new counsel asked to substitute with trial only six days away. See State v. Sandoval, 171 Wn.2d 163, 170, 249 P.3d 1015 (2011) (recognizing complex impacts of immigration law on criminal

---

[3] Peña Salvador argues that he requested some continuances because of difficulty in gaining full cooperation from the State's witnesses. But it is clear he requested at least some continuances for his own benefit, including the last ones to permit Currie to become familiar with the case when she said she planned to try it. Even if the State had contributed to some of the delay that led to the January 2020 trial date, that by itself would not mean that Peña Salvador's new request to change counsel six days before trial was reasonable under the circumstances. Hampton, 184 Wn.2d at 869-70.

representation) (citing <u>Padilla v. Kentucky</u>, 559 U.S. 356, 364-70, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)).

Under the circumstances, the trial court's denial of the request to substitute counsel based on the need to timely try the case was not a violation of the Sixth Amendment right to counsel of choice.

B

Peña Salvador further claims that the trial court violated his Sixth Amendment right to effective assistance of counsel by not inquiring into the extent of the conflict between him and Currie, and that he was constructively denied counsel by being "forced" to have Currie represent him. However, the trial court's inquiry into any alleged conflict was constitutionally sufficient, as was Currie's subsequent representation at trial.

The decision whether to grant a defendant's motion for new court appointed counsel is one within the trial court's discretion. <u>State v. Holmes</u>, 31 Wn. App. 2d 269, 279, 548 P.3d 570 (citing <u>State v. Stenson</u>, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997)) (<u>Stenson</u> I), <u>review denied</u>, 3 Wn.3d 1024, 556 P.3d 1111 (2024). The three factors that courts are to consider are: " '(1) the reasons given for the dissatisfaction, (2) the court's own evaluation of counsel, and (3) the effect of any substitution upon the scheduling proceedings.' " <u>Id.</u> (quoting <u>Stenson</u> I, 132 Wn.2d at 734). A denial of a defendant's motion for new court appointed counsel is reviewed under the abuse of discretion standard. <u>Id.</u> (citing <u>State v. Varga</u>, 151 Wn.2d 179, 200, 86 P.3d 139 (2004)). The trial court abuses its discretion if its decision is " 'manifestly unreasonable' " or " 'exercised on untenable grounds, or

for untenable reasons.' " Id. (quoting State v. Vermillion, 112 Wn. App. 844, 855, 51 P.3d 188 (2002)).

The Sixth Amendment guarantees all criminal defendants the right to effective assistance of counsel, but it does not guarantee a right to particular court-appointed counsel or a right to "meaningful relationship" with appointed counsel. Morris v. Slappy, 461 U.S. 1, 14, 103 S. Ct. 1610, 75 L. Ed. 2d 610 (1983). "[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." United States v. Cronic, 466 U.S. 648, 658, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). "[T]he Sixth Amendment is not implicated absent an effect of the challenged conduct on the reliability of the trial process." State v. McCabe, 25 Wn. App. 2d 456, 461, 523 P.3d 271, review denied, 1 Wn.3d 1014, 530 P.3d 186 (2023). A "complete denial of counsel" is a Sixth Amendment violation because of its effect on a fair trial. Cronic, 466 U.S. at 659.

In determining whether an irreconcilable conflict exists, for this purpose, this court considers " '(1) the extent of the conflict, (2) the adequacy of the inquiry, and (3) the timeliness of the motion.' " Holmes, 31 Wn. App. 2d 279 (quoting In re Pers. Restraint of Stenson, 142 Wn.2d 710, 724, 16 P.3d 1 (2001) (Stenson II)). "[T]his court considers the extent and nature of the breakdown in the relationship and its effect on the representation actually presented. . . . If the representation is adequate, prejudice must be shown." State v. Schaller, 143 Wn. App. 258, 270, 177 P.3d 1139 (2007) (footnotes omitted). Our purpose "is to ensure that defendants receive a fair trial." Id. To warrant substitution of counsel, "[c]ounsel

14

and defendant must be at such odds as to prevent presentation of an adequate defense." State v. Thompson, 169 Wn. App. 436, 457, 290 P.3d 996 (2012).

A trial court's inquiry in response to a motion to discharge counsel is adequate when the trial court " allow[s] the defendant and counsel to express their concerns fully.' " Holmes, 31 Wn. App. 2d 284 (quoting Schaller, 143 Wn. App at 271). When a defendant "asserts his reasons for dissatisfaction on the record, formal inquiry is not always necessary." Id. When a " 'request for change of counsel comes during the trial, or on the eve of trial, the [c]ourt may, in the exercise of its sound discretion, refuse to delay the trial to obtain new counsel and therefore may reject the request.' " Stenson II, 142 Wn.2d at 732 (quoting United States v. Williams, 594 F.2d 1258, 1260-61 (9th Cir. 1979)).

Peña Salvador put forward several reasons for dissatisfaction with Currie: difficulty communicating with her, a preference for a Spanish speaking attorney, a concern that she was conspiring with the prosecutor to make him take a plea offer, and a belief that she had stopped working on his case because she was no longer being paid. When questioned by the court, Currie primarily expressed concern over Peña Salvador's accusation that she was conspiring with the prosecutor. In her written motion to withdraw, Currie cited her representation being in a limited capacity and the unwillingness of an unidentified third party to continue paying for her services as reasons for withdrawal. But this was a direct contradiction of her statements made to the court at the time she substituted as Peña Salvador's defense counsel, and fell short of indicating Currie in fact was being asked to try

the case without compensation. She had told the court, "[I]t is our intention to go to trial." This was effectively a condition for the court to agree to the substitution.

The motion for withdrawal was brought six days before the scheduled trial date. The court gave Peña Salvador and Currie opportunities to explain their written motions at the January 7 hearing. The court gave Peña Salvador another opportunity to express himself after Currie gave her reasons for withdrawing. After having given Currie and Peña Salvador opportunities to explain their concerns on the record, the court denied the motion in part because of the delay in trial that granting it would have necessitated.

The conflict between Peña Salvador and Currie did not rise to the level of Stenson II, which itself "d[id] not come close to constituting denial of counsel." 142 Wn.2d at 732. In Stenson II, the criminal defendant insisted that his counsel had spent no time preparing for trial, refused to investigate certain matters, visited too infrequently, and was unreachable by phone. Id. at 727. His counsel made his own motion to withdraw, saying of his client, "Quite frankly, I can't stand the sight of him." Id. at 729. Here, communication between Peña Salvador and Currie was never as strained as in Stenson II, which was itself not a close case.

Peña Salvador also does not show that any strain in his relationship with Currie affected the subsequent representation she provided at trial. At oral argument, Peña Salvador referenced Currie's motion to dismiss due to lack of witness credibility before trial and her "not seem[ing] to understand criminal law"

16

as examples of Currie's representation at trial being deficient.[4] But the record belies these broad-stroke arguments. Currie filed motions in limine, made motions to suppress under CrR 3.5, presented pretrial exhibits, questioned and challenged jurors for cause, exercised peremptory challenges, cross-examined State's witnesses, argued against State's motions, examined the defendant in his own defense, made opening and closing statements, and raised numerous objections during the 13 day trial. See Holmes, 31 Wn. App. 2d at 283-84 (citing State v. Svikel, No. 83649-8-I, slip op. at 7 (Wash. Ct. App. Mar. 27, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/836498.pdf) (no deprivation of right to counsel when "adequate defense" was presented, including conducting voir dire, arguing motions in limine, making opening and closing statements, questioning witnesses, and raising objections). Peña Salvador and his appellate attorney did not question the adequacy of any of these aspects of trial in his direct appeal, and other than the criticism at oral argument noted above, he does not question them in this PRP.

The court did not abuse its discretion in denying Peña Salvador's motion to substitute counsel based on a constructive denial of counsel.

IV

Peña Salvador asserts that his appellate counsel rendered ineffective assistance of counsel, in violation of his Sixth Amendment rights, by failing to raise the denial of his pretrial motion to substitute counsel on direct appeal. We

---

[4] Wash. Ct. of Appeals oral arg., In re Pers. Restraint of Peña Salvador, No. 84552-7-I (Sept. 24, 2024), at 4 min., 45 sec., https://www.tvw.org/watch/?clientID=9375922947&eventID=2024091257&startStreamAt=285.

disagree. Peña Salvador's appellate counsel acted reasonably in raising the issues that she chose on appeal. And even if counsel had raised the motion to substitute issue, it is improbable that the claim of error would have led to relief.

Criminal defendants have a right to effective assistance of counsel on their first appeal of right. Evitts v. Lucey, 469 U.S. 387, 396, 105 S. Ct. 830, 33 L. Ed. 2d 821 (1985). In a PRP, to prevail on a claim of ineffective assistance on appeal, "petitioners must show [1] that the legal issue which appellate counsel failed to raise had merit and [2] that they were actually prejudiced by the failure to raise or adequately raise the issue." In re Pers. Restraint of Maxfield, 133 Wn.2d 332, 344, 945 P.2d 196 (1997). "Failure to raise all possible nonfrivolous issues on appeal is not ineffective assistance." In re Pers. Restraint of Dalluge, 152 Wn.2d 772, 787, 100 P.3d 279 (2004). It is an appellate attorney's role to "decide[] what issues may lead to success." Id. But "if a petitioner can show that his appellate counsel failed to raise an issue with underlying merit, then the first prong of the ineffective assistance test is satisfied." Id. Under the second prong, the defendant "must show a reasonable probability that, but for his counsel's unreasonable failure" the defendant "would have prevailed on his appeal." Id. at 788 (emphasis omitted). In a collateral attack, "if a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice." In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

Peña Salvador's appellate counsel acted reasonably by not raising the motion to substitute counsel. Authorities supporting the right to discharge retained counsel condition that right on a timely motion not adversely affecting an appropriately prompt trial. Peña Salvador's claim is not in accord with the facts of those cases, in which motions were brought in a manner that would not have unfairly delayed trial. For that reason, it was a reasonable tactic for appellate counsel to focus on other avenues for relief. For the same reason, Peña Salvador does not show prejudice, because he does not show a reasonable probability that this court would have found an abuse of discretion warranting relief had the issue been raised on direct appeal.

V

In his supplemental brief, Peña Salvador seeks relief based on his further request for new counsel during his sentencing. He did not assert this claim in his petition. RCW 10.73.090 places a one year time limit on collateral attacks on convictions, unless exempted under RCW 10.73.100. Once the one year limit is reached, only issues included in the original timely petition may be raised in a supplemental brief unless otherwise exempted. In re Pers. Restraint of Quintero, 29 Wn. App. 2d 254, 288, 541 P.3d 1007, review denied, 3 Wn.3d 1018, 554 P.3d 1234 (2024). Peña Salvador's conviction became final on October 15, 2021. Peña Salvador's supplemental brief of petitioner was filed December 8, 2023. The request for new counsel at sentencing was a new request with considerations

distinct and different from his request for new counsel before trial. Not falling within any of the exemptions, this claim is time barred and we do not consider it.

We deny Peña Salvador's petition.

_Birk, J._

WE CONCUR:

_Coburn, J._          _Hazelrigg, ACJ_