# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46852-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JEREMY EDWARD GAINES, | |
| Appellant. | |

BJORGEN, C.J. — Jeremy Edward Gaines appeals his convictions for solicitation to deliver a controlled substance, conspiracy to deliver a controlled substance, first degree unlawful possession of a firearm, and the firearm enhancements attached to the first two convictions.

Gaines argues that (1) insufficient probable cause supported the warrant to search his vehicle, (2) the trial court abused its discretion in denying his motion for continuance, effectively depriving him of his right to choose private counsel, (3) solicitation to deliver a controlled substance is not criminalized, and (4) the State presented insufficient evidence to allow a jury to return guilty verdicts on his convictions.

We decline to address the merits of Gaines's search warrant argument, because it was not adequately addressed in his briefing. As to his other arguments, we hold that the trial court did

not abuse its discretion in declining his motion for continuance, that chapter 9A.28 RCW criminalizes solicitation to deliver a controlled substance, and that there is sufficient evidence to uphold all of his convictions.

Accordingly, we affirm.

FACTS

On June 3, 2013, police used a confidential informant (CI) to conduct a controlled buy[1] from Jessica Handlen. Police observed the CI and Handlen meet and watched Handlen explain to the CI that she was waiting for her "source." Verbatim Report of Proceedings (VRP) at 28-29. Shortly thereafter, a white Dodge Charger pulled up near Handlen and the CI. The vehicle was registered to Gaines and officers identified the driver in the vehicle as Gaines. Police observed Handlen go up to the driver's side window for a brief moment and then return to the CI. The CI returned to the police and gave them a package received from Handlen, which field tested at the time as 6.4 grams of methamphetamine. However, it was later discovered that this substance was in fact methylsulfonylmethane, a legal substance that is often mixed with methamphetamine.[2]

On June 20, police stopped Gaines's Dodge Charger in order to execute a search warrant. As police surrounded the vehicle, three occupants were identified, including Gaines in the

---

[1] According to the record, a "controlled buy" is where police officers arrange and observe a drug transaction to acquire information about potential illegal drug activity. Verbatim Report of Proceedings (VRP) at 19-20.

[2] The State expected an expert to testify that the drugs from the June 3 transaction were methamphetamine. However, at trial, a state patrol laboratory forensic scientist testified that it was a purely legal substance, often used to "cut" methamphetamine. VRP at 140, 143, 145-46. Thus, Gaines was subsequently charged with delivery of an imitation controlled substance. The jury later acquitted Gaines of this charge.

driver's seat and Brandon Ryan in the front passenger seat. Police observed Gaines's hands make a downward motion in front of himself and later found a gun placed on the front floorboard on the driver's side in front of Gaines. Police also later found a second gun on the front floorboard of the front passenger's side in front of Ryan.

Upon arrest, Gaines made several statements to the police. He acknowledged that he dealt narcotics but that "he was a small fish . . . [as] a runner[3] for the Mexicans." VRP at 60-61. He stated that he was "[w]iring the money to Mexico for the dope man" and was "supposed to be picking up two pounds." *Id.* at 62, 65.

The police found wire transfer receipts during their search of Gaines's vehicle. The first receipt was dated May 29, 2013, four days before Gaines was observed contacting Handlen on June 3. The May 29 receipt indicated that Gaines sent $900 to an Ana Ramos Cuevas in Mexico. The second wire transfer receipt was dated June 20, 2013, the same day Gaines and Ryan were arrested. The June 20 receipt indicated that Ryan had sent $1,000 to a Jesus Enrique Palomera in Mexico.

After the State charged Gaines for his involvement in these crimes, he requested that Gary Clower, a privately retained attorney, replace his assigned public defender. The judge granted the request on July 2, 2013. After the prosecutor and Clower jointly requested and received two continuances, Gaines replaced Clower with a new private attorney, Geoffrey Cross. With Cross as Gaines's counsel, the case was continued six times. Two of the continuances were

---

[3] According to the record, a "runner" is someone who gets paid to broker deals for a higher level person or entity in a drug operation. VRP (Oct. 21, 2014) at 61. They often transport drugs from one person to another and then give money back to the higher level person or entity in exchange for the drugs.

requested solely by the prosecutor to accommodate his trial schedule,[4] but most were requested by both parties.[5]

Gaines voluntarily retained Cross for approximately seven months, but on May 7 and 8, 2014, Gaines and Cross respectively moved to have Cross replaced. At the time, Cross had also filed a motion for a competency evaluation of Gaines. On May 15, the trial court heard arguments and granted the competency evaluation. However, the court denied the motion for substitution of counsel, reasoning that the trial date was too close and that "if there are questions about his competence, this certainly isn't the time for him to be making a decision about withdrawing counsel." VRP (May 15, 2014) at 30-31. Gaines later spent some time at Western State Hospital until his competency was deemed restored a few months later.

Shortly after Gaines's competency was restored, Cross moved to withdraw as counsel twice, stating that Gaines maintained he did not want Cross's representation.[6] Cross's affidavits to these motions stated that he had a "fairly good relationship" with Gaines until May when Gaines requested him to be discharged. Clerk's Papers (CP) at 330. Cross expressed that when he had the prosecutor meet with Gaines and himself, Gaines took "excessive exception to the fact

_____

[4] On Jan 15, 2014, Gaines's case was continued to accommodate the prosecutor's trial schedule. On May 1, the case was continued at the State's request due to the prosecutor being in another trial.

[5] On Jan 27, 2014 both parties requested a continuance to complete discovery and to accommodate the prosecutor's trial schedule. On March 11, the case was continued because Gaines's co-defendant's attorney was sick. On March 17, the case was continued because of "[defense] attorney & [plaintiff] atty conflicts." Reply Br. of Appellant, App'x F. On April 7, the case was continued because new charges had been brought against Gaines while he had been out on bail, the attorneys needed more time to prepare for trial, and the primary police witness was unavailable.

[6] Cross moved to withdraw another time as well, before Gaines's competency was restored.

that [he] even exposed him to the prosecutor." CP at 330. Cross also stated that when he tried to go to the jail to prepare for trial, Gaines refused to allow him access to the jail. To Cross, "[a]ll communication between [him]self and [] Gaines ha[d] broken down." *Id.* Meanwhile, the trial court granted two more jointly sought continuances,[7] and trial was ultimately set for October 16, 2014. At this point, Gaines's case had been continued for over a year from the original trial date of August 13, 2013.

On the day set for trial, October 16, 2014, the court heard Gaines's and Cross's renewed motion for a continuance and counsel substitution in conjunction with Barbara Corey, who was a private attorney with whom Gaines wanted to replace Cross. The court ultimately denied the motions. When the court asked Corey if she could try the case before the end of the year, she replied, "I think not." VRP (Oct. 16, 2014) at 12. Although Corey stated that she could try the case in February 2015, the court disagreed based on Corey's caseload, which contained many cases that were all nearing a year old or more and would soon require resolution. The court stated that even "if half of them settled . . . [i]t would still take a year to try this one." *Id.* at 9. It further noted that the Gaines case itself was already "very old" and that if it had only been "a 30-day-old, 60-day-old, 90-day-old case, that's something else." *Id.* at 19. The court also had concerns about the right of Ryan, Gaines's co-defendant, to a speedy trial, even though Ryan himself was not worried about a few more months' delay. The trial court also noted that Cross's

---

[7] On September 17, 2014, the case was continued again because "additional time [was] needed to consider resolution options" and Gaines had just provided a supplemental witness list and evidence. CP at 353. On September 30, the case was again continued because Gaines was "trying to track down material witness," a "[w]itness for [the] State [was] not available" and "[s]tatus of [Gaines's] representation [was] up in the air." CP at 354.

motions to substitute had been denied at least "twice"[8] previously, *id.* at 18, and that if Gaines was going to throw what "amounts to kind of a tantrum" because he did not get his way, the court was not compelled to grant his motion for new counsel.[9] *Id.* at 18.

After trial with attorney Cross representing Gaines, the jury returned guilty verdicts on charges for first degree unlawful possession of a firearm, unlawful solicitation to deliver a controlled substance, and conspiracy to deliver a controlled substance. The jury also entered verdicts for firearm enhancements on the latter two convictions.[10]

Gaines appeals.

## ANALYSIS

### I. SEARCH WARRANT

In his assignments of error, Gaines claims that the court erred in its determination that probable cause supported the warrant to search his vehicle. The State contends that we should not reach Gaines's challenge to the search warrant, because even though he assigned error to the warrant, he "abandoned the claim by failing to address it in the body of the opening brief." Br. of Resp't at 25. We agree.

---

[8] It is not clear from the record when the other time Cross's motion to substitute was denied other than the court's oral ruling on May 15, 2014. However, because Cross agreed that his motions to substitute had been denied twice in the past, we accept this as a verity.

[9] Cross also stated in his affidavit to the motions to substitute that there was a possible conflict of interest due to Cross having taken a witness statement on Gaines' behalf from a former client of Cross's. Whether this conflict continued to be a problem at the time of the hearing is unclear from the record and is not argued in the parties' briefs.

[10] Gaines was also found guilty of unlawful solicitation to possess a controlled substance with intent to deliver. However, this charge was later dismissed on double jeopardy grounds at sentencing and is not at issue in this appeal.

"Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review." *State v. Stubbs*, 144 Wn. App. 644, 652, 184 P.3d 660 (2008), *rev'd by* 170 Wn.2d 117 (2010). Here, Gaines makes argumentative statements in the "Statement of Facts" section of his brief regarding the sufficiency of the search warrant, but fails to elaborate on it in the "Analysis" section or cite authority in accordance with the Rules of Appellate Procedure (RAP). RAP 10.3(a)(6). Additionally, after the State argued in its brief that Gaines had abandoned the claim, he implicitly affirmed the State's assertion by failing to respond or even mention the search warrant issue in his reply brief. Instead, his reply brief focuses entirely on his argument regarding the right to choose private counsel.

Gaines's disjointed assignments of error further buttress our decision not to address the merits of the search warrant issue. He assigned error to conclusions of law two through four and six through eight on the "Assignment of Error" portion of the brief, but on the "Issues Pertaining to Assignments of Error" portion, conclusions of law two through seven are all challenged.[11] Despite Gaines having an opportunity to amend his opening brief, we cannot reasonably decipher what assignments of error he wants us to review, particularly without adequate accompanying analysis.

Because Gaines failed to follow the RAP, coupled with the difficulty in construing from his brief what he wants us to review, we decline to review this issue.

---

[11] Conclusion five should not have been assigned error because the trial court accepted the State's concession that there was *not* a sufficient nexus for the warrant to be executed on Gaines's residence.

## II. RIGHT TO CHOOSE PRIVATE COUNSEL

Gaines argues that the trial court abused its discretion when it denied his motion for a continuance, effectively depriving him of his right to retain private counsel. We disagree.

When a defendant requests a continuance for the purpose of replacing his current attorney with new private counsel, we review the court's decision to deny the continuance for an abuse of discretion. *State v. Hampton*, 184 Wn.2d 656, 670, 361 P.3d 734 (2015), *petition for cert. filed*, No. 15-8300 (Feb. 24, 2016). "A trial court abuses its discretion when its decision 'is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons.'" *Id.* (quoting *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993)). "'A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" *Hampton*, 184 Wn.2d at 670 (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). "'A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, adopts a view that no reasonable person would take, and arrives at a decision outside the range of acceptable choices.'" *Hampton*, 184 Wn.2d at 670-71 (quoting *Rohrich*, 149 Wn.2d at 654).

The Sixth Amendment to the United States Constitution grants a criminal defendant, if he or she can afford it, the right to a private counsel of his or her choice.[12] *Hampton*, 184 Wn.2d at 662-63. However, this right is not absolute. *Id.* at 663. A defendant's right to counsel of his or her choice is limited, in part, in that a trial court considering a continuance for this purpose must

---

[12] In contrast, an indigent defendant, who is guaranteed appointment of counsel, can only substitute an appointed attorney if he or she demonstrates an "irreconcilable conflict." *Hampton*, 184 Wn.2d at 663.

balance that right against the demands of its calendar and the public's interest in the prompt and efficient administration of justice. *Id.* A court has wide latitude in weighing these interests. *Id.* The court is not required to apply any mechanical test and can consider any relevant information necessary to make its decision. *Id.* at 669. However, a court may be guided by the 11 *Hampton* factors in determining whether to grant a continuance to allow substitution of counsel:

> "(1) whether the request came at a point sufficiently in advance of trial to permit the trial court to readily adjust its calendar;
> (2) the length of the continuance requested;
> (3) whether the continuance would carry the trial date beyond the period specified in the state speedy trial act;
> (4) whether the court had granted previous continuances at the defendant's request;
> (5) whether the continuance would seriously inconvenience the witnesses;
> (6) whether the continuance request was made promptly after the defendant first became aware of the grounds advanced for discharging his or her counsel;
> (7) whether the defendant's own negligence placed him or her in a situation where he or she needed a continuance to obtain new counsel;
> (8) whether the defendant had some legitimate cause for dissatisfaction with counsel, even though it fell short of likely incompetent representation;
> (9) whether there was a 'rational basis' for believing that the defendant was seeking to change counsel 'primarily for the purpose of delay';
> (10) whether the current counsel was prepared to go to trial;
> (11) whether denial of the motion was likely to result in identifiable prejudice to the defendant's case of a material or substantial nature."

*Id.* at 669-70 (quoting 3 WAYNE R. LAFAVE, WASHINGTON PRACTICE: CRIMINAL PROCEDURE 11.4(c), at 718-20 (3d ed.2007)).

Here, the court denied the continuance because of (1) Corey's inability to try the case within a couple of months, (2) Corey's caseload, which had many old cases, creating the possibility of prolonging the trial up to another year, (3) its concern with Gaines's co-defendant's right to a speedy trial, (4) the age of the case generally, which had received numerous continuances in the past, and (5) the prior denials of the motion for substitution. These are reasonable bases for exercising discretion to deny the continuance.

It was also brought before the trial court, however, that Cross and Gaines had had potential communication problems since May 2014. Cross maintained that Gaines refused to be represented by him, citing Gaines's disapproval of Cross's attempt to negotiate plea deals with the prosecutor in this case, as well as Gaines's refusal to come out of his jail cell when Cross tried to prepare for trial. We also note our concern that the trial court did not specifically address Gaines's allegation, which was specifically brought up at the hearing, that Cross had allegedly arranged an improper meeting with the prosecutor. Our concern is heightened by the trial court's characterization of Gaines's behavior as amounting "to kind of a tantrum." VRP (Oct. 16, 2014) at 18.

However, in examining the trial court's ruling overall, Gaines's primary issue with Cross was argued to the court, and *Hampton* does not require that the court make specific findings. *Hampton* requires instead that the record indicate that the court made a reasoned decision.[13] Even though there was evidence of problems between Gaines and Cross, the court reasonably believed that Corey, who was to be Cross's replacement, could not try the case in an acceptable amount of time. Indeed, the court indicated that it would have permitted Corey a shorter continuance to prepare for Gaines's trial. Although there was disagreement whether Corey could have tried the case by February, we cannot say the court abused its discretion after considering Corey's calendar in some detail in making its assessment that she could not.

---

[13] Gaines also argues that the court misapplied the law, but as *Hampton*, 184 Wn.2d at 669-72 clarified, the trial court is not required to apply any mechanical test so long as we can reasonably discern that it weighed the defendant's choice of counsel against the other relevant circumstances.

Gaines also argues that because he "made no motions for continuance" and only "joined in and/or did not oppose motions made by the deputy prosecutor or codefendant's attorney," the court was unreasonable in not granting his request for a continuance. Br. of Appellant at 32-35; Reply Br. of Appellant at 4-5. However, while the case was occasionally continued solely at the request and need of the prosecutor, the record also demonstrates that at least some of the continuances were due to Gaines's actions. For example, the April 7, 2014 continuance was granted, in part, because new charges had been brought against him while he was out on bail. In addition, the joint continuance motions are to be taken for what they were: a request by *both* Gaines and the prosecutor for the court to delay trial. Therefore, Gaines's characterization that the continuances were predominantly only requested by the prosecutor is incorrect. In any event, the continuances, along with Gaines's stay in Western State Hospital, resulted in the case becoming sufficiently old so that it was reasonable for the court to base its denial, in part, on the case's age.[14]

We hold that, taking all the facts into consideration, the trial court did not abuse its discretion in denying Gaines's motion for a continuance.[15]

---

[14] Gaines also argues that that the State incorrectly presented evidence that it would suffer prejudice because a delay would cause possible difficulty in presenting witnesses at trial. However, it is not clear that the court based its decision on this argument, and therefore, we do not examine it as a reason for finding the decision reasonable.

[15] Gaines also discusses possible prejudice to him from Cross's actions at trial. However, this allegation fits more squarely under an ineffective assistance of counsel claim and not as a means to impeach the reasonableness of the court's denial of a continuance before trial.

III. CRIMINALIZATION OF SOLICITATION TO DELIVER A CONTROLLED SUBSTANCE

Gaines argues that his conviction for solicitation to deliver a controlled substance must be dismissed due to the absence of statutory law criminalizing his conduct. We disagree.

In *In re Personal Restraint of Hopkins*, 137 Wn.2d 897, 900, 904, 976 P.2d 616 (1999), our Supreme Court held that solicitation to deliver a controlled substance is not an offense under chapter 69.50 RCW, the Uniform Controlled Substances Act, and therefore that conviction was not subject to the Act's sentence-doubling provisions. However, the *Hopkins* court also recognized that the defendant was still subject to punishment for solicitation to deliver a controlled substance under chapter 9A.28 RCW, which criminalizes anticipatory offenses including solicitation. *Id.* at 899-900; *see also In re Pers. Restraint of Bowman*, 109 Wn. App. 869, 871, 38 P.3d 1017 (2001). Specifically, RCW 9A.28.010 criminalizes a solicitation of any crime outside of title 9A, which would include chapter 69.50 RCW, since it makes delivery of a controlled substance unlawful. Accordingly, we hold that solicitation to deliver a controlled substance is criminalized under chapter 9A.28 RCW.

IV. SUFFICIENCY OF THE EVIDENCE

Gaines argues that the State presented insufficient evidence to convict him of conspiracy to deliver a controlled substance, solicitation to deliver a controlled substance, and first degree unlawful possession of a firearm. We disagree.

1.     Legal Principles

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits a reasonable juror to find the essential elements of the crime beyond a reasonable doubt. *State v. McPherson*, 186 Wn. App. 114, 117, 344 P.3d 1283, *review denied*,

12

183 Wn.2d 1012 (2015). A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences that a juror can draw from that evidence. *Id.* at 117-18. All reasonable inferences from the evidence must be drawn in favor of the State and interpreted strongly against the defendant. *State v. Miller*, 179 Wn. App. 91, 104, 316 P.3d 1143 (2014). Circumstantial evidence is no less reliable than direct evidence. *Id*. at 105. We "defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

2.      Conspiracy To Deliver a Controlled Substance

Gaines argues that there was insufficient evidence to convict him of conspiracy to deliver a controlled substance. We disagree.

A person is guilty of criminal conspiracy "when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement." RCW 9A.28.040(1). A formal agreement is not necessary for the formation of a conspiracy; rather, "[a]n agreement can be shown by a 'concert of action, all the parties working together understandingly, with a single design for the accomplishment of a common purpose.'" *State v. Smith*, 65 Wn. App. 468, 471, 828 P.2d 654 (1992) (quoting *State v. Casarez-Gastelum*, 48 Wn. App. 112, 116, 738 P.2d 303 (1987)). While the threshold to show a "substantial step" in a conspiracy context is lower than for attempt,[16] it still requires a manifestation "'that the

---

[16] "A person is guilty of an attempt to commit a crime if, with intent to commit a specific crime, he or she does any act which is a substantial step toward the commission of that crime." RCW 9A.28.020(1).

conspiracy is at work, and is neither a project still resting solely in the minds of the conspirators nor a fully completed operation no longer in existence.'" *State v. Dent*, 123 Wn.2d 467, 475, 477, 869 P.2d 392 (1994) (internal quotation marks omitted) (quoting *Yates v. United States*, 354 U.S. 298, 334, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957)). Preparatory conduct which furthers the ability of the conspirators to carry out the agreement can be "a substantial step in pursuance of [the] agreement". *Id.* at 477. Conspiracy to deliver a controlled substance specifically requires the involvement of at least three people, because the delivery itself involves two people and a conspiracy must involve a third person other than those involved in the delivery. *State v. McCarty*, 140 Wn.2d 420, 426, 998 P.2d 296 (2000).

Here, Gaines admitted that he was a drug runner for individuals located in Mexico and that he was on his way to pick up two pounds. Testimony at trial established that about two pounds of methamphetamine is usually a quantity that comes from a major source such as the Mexican cartel members. Gaines was also observed on June 3 delivering a substance often mixed with methamphetamine to Handlen. Taking this evidence in the light most favorable to the State, one can reasonably infer that Gaines was admitting to being on his way to pick up two pounds of methamphetamine.

Additionally, Gaines was found in a vehicle with Ryan, whose name was listed on the June 20 wire transfer receipt that listed a $1,000 payment sent to a person located in Mexico, which corroborated Gaines's statements. The May 29 wire transfer receipt, which bore Gaines's name, coupled with police observing Gaines deliver drugs to Handlen on June 3, supplies circumstantial evidence that Gaines, Ryan, and individuals located in Mexico had an agreement to deliver methamphetamine to a low level supplier such as Handlen. Even though Gaines was

14

arrested and was found with no methamphetamine, testimony at trial established that wire transfers are often used to pay money to recipients in Mexico in exchange for methamphetamine smuggled into the United States. Therefore, a jury could have reasonably found that the payment indicated on the June 20 wire receipt constituted a substantial step toward affecting that conspiracy.

Gaines argues that because the May 29 wire transfer receipt was dated outside the State's charging period for conspiracy, there was no evidence he participated in the wiring of money to Mexico. While we agree that the May 29 receipt does not establish a conspiracy on its own, that wire transfer, as previously noted, is circumstantial evidence of Gaines's intent and corroborates his statements regarding the June 20 incident.

Gaines also argues that there is insufficient evidence under the corpus delicti doctrine to show that the purposes underlying the wire transfers were to send money to Mexico in exchange for methamphetamine. Generally, corpus delicti requires independent evidence that would corroborate a defendant's incriminating statement. *State v. Brockob*, 159 Wn.2d 311, 327-28, 150 P.3d 59 (2006). Police officers' observations of Gaines's prior delivery on June 3, coupled with the May 29 wire receipt bearing Gaines's signature, supply sufficient, independent corroborative evidence of Gaines's incriminating statements.

Accordingly, we hold the State presented sufficient evidence to convict Gaines of conspiracy to deliver a controlled substance.

3.      Solicitation To Deliver a Controlled Substance

Gaines next argues that there was insufficient evidence to convict him of solicitation to deliver a controlled substance. We disagree.

15

Solicitation to deliver a controlled substance requires proof of a person's "'intent to promote or facilitate'" the crime. *State v. Constance*, 154 Wn. App. 861, 883, 226 P.3d 231 (2010) (quoting *State v. Varnell*, 162 Wn.2d 165, 169, 170 P.3d 24 (2007)); RCW 9A.28.030(1); former RCW 69.50.401 (2013). A person is guilty of the offense whether or not the criminal act is completed. *Constance*, 154 Wn. App. at 884. Under RCW 9A.28.030(1) solicitation occurs when "a person offers money or something of value to another person to commit a crime." *Id*.; RCW 9A.28.030.

Our analysis of this challenge is largely similar to the discussion above of conspiracy to deliver a controlled substance. Gaines's statements to police officers, the wire receipts, and his participation in the June 3 transaction are sufficient evidence that he solicited delivery of methamphetamine on June 20. Specifically, the jury could have reasonably inferred that the June 20 wire receipt was evidence of an offer of money to individuals located in Mexico for methamphetamine. Although Gaines argues that $900 would not be enough money to buy a "kilo," or 2.2 pounds, of methamphetamine, Brief of Appellant at 41, testimony at trial established that it is common for drug dealers to make incremental "payments" in order to purchase this amount. VRP at 90, 96-97.

Gaines also argues that Handlen's lack of knowledge at trial that he sold to her specifically on June 3 makes the evidence insufficient. In addition, he argues that because the purpose of the wire receipts can only be proved by Gaines's statements, the evidence is insufficient under the corpus delicti doctrine. However, similar to conspiracy to deliver a controlled substance, the May 29 receipt and the police's surveillance of the June 3 incident is

16

sufficient circumstantial evidence to demonstrate Gaines's intent to solicit individuals from Mexico with money and to arrange a purchase of methamphetamine on June 20.[17]

Accordingly, we hold the State presented sufficient evidence to convict him of solicitation to deliver a controlled substance.

4.      First Degree Unlawful Possession of a Firearm

Finally, Gaines argues that there was insufficient evidence to convict him of first degree unlawful possession of a firearm. We disagree.

First degree unlawful possession of a firearm requires proof that a defendant "owns, has in his or her possession, or . . . control any firearm after having previously been convicted . . . of any serious offense as defined in this chapter."[18] Former RCW 9.41.040(1)(a) (2011). Possession can be actual or constructive. Because Gaines was not directly observed with a firearm, we examine whether he constructively possessed a firearm.

To determine constructive possession we analyze "whether, under the totality of the circumstances, the defendant exercised dominion and control over the item in question." *State v. Davis*, 182 Wn.2d 222, 234, 340 P.3d 820 (2014) (Stephens, J., dissenting).[19] While the ability to immediately take actual possession of an item can establish dominion and control, mere

---

[17] Gaines also contends that the evidence is insufficient because the State presented evidence only that he had been associated with methylsulfonylmethane, a legal substance. Inchoate crimes, such as solicitation and conspiracy, by their very nature, do not require completion of the actual, underlying crime. Therefore, there is no requirement that methamphetamine was ever actually found.

[18] Gaines stipulated to the prior serious offense conviction, which made the possession unlawful.

[19] This portion of the *Davis* dissent received five votes, so it has precedential value.

proximity to the item cannot. *Id.* Factors supporting dominion and control include ownership of the item and ownership of the property where the item is located. *Id.*

In *Davis*, 182 Wn.2d at 235, the Supreme Court reversed the defendants' firearm convictions when the evidence only established that they had "briefly handled the item" for the true possessor of the gun. In contrast to this case, Gaines was pulled over and found making hand motions toward the space in front of the driver's seat where he was sitting. Immediately thereafter, officers found a gun in the location toward which he had been making the hand motions. The vehicle in which the firearm was located was registered to Gaines. A jury could have reasonably inferred from Gaines's motion toward the space where the gun was found that he placed the gun there. Testimony at trial also established that firearms are often used to protect drug runners when dealing with a larger amount of drugs, which, coupled with the firearm found on the passenger side near Ryan, could have buttressed a jury's belief that Gaines possessed the firearm in front of him to protect his drug operation. Unlike *Davis*, a jury could have reasonably inferred from the totality of this evidence that Gaines had dominion and control over the firearm.

Gaines argues that the officer's testimony during trial recounting his observations about Gaines's hand motions was inconsistent and contradictory. Even if we were to agree, we "must defer to the trier of fact on issues of conflicting testimony [and] credibility of witnesses" on a sufficiency challenge. *Thomas*, 150 Wn.2d at 874-75.

Accordingly, we hold the State presented sufficient evidence to convict Gaines of first degree unlawful possession of a firearm.

18

No. 46852-2-II

CONCLUSION

We decline to address the merits of the search warrant argument. We hold that the court did not in abuse its discretion in denying the continuance, that chapter 9A.28 RCW criminalizes solicitation to deliver a controlled substance, and that there is sufficient evidence to uphold all of his convictions. For these reasons, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
BJORGEN, C.J.

We concur:

_____
MAXA, J.

_____
SUTTON, J.

19