IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73324-9-I |
| | ) | (Consolidated with No. 74228-1-I) |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JESSICA CARDE | ) | |
| AKA JESSICA HARTMAN | ) | UNPUBLISHED OPINION |
| AKA JUANITA HOFSETH-LAMMER | ) | |
| AKA JUANITA HOFSETH | ) | |
| AKA JUNITA FRYE, | ) | |
| | ) | |
| Appellant. | ) | FILED: January 30, 2017 |

SCHINDLER, J. — A jury convicted Jessica Carde of three counts of theft in the first degree, one count of attempted theft in the first degree, and three counts of mortgage fraud. Carde seeks reversal of her convictions and the order of restitution.[1] Carde challenges denial of two pretrial motions to substitute appointed counsel. Carde also challenges denial of her request to continue the restitution hearing to allow her to replace appointed counsel with private counsel. Because the trial court did not abuse its discretion by denying the pretrial motions to substitute appointed counsel and the motion to continue the restitution hearing, we affirm.

---

[1] Carde filed an appeal of the judgment and sentence and the order of restitution. This court consolidated the appeals.

Charges Against Carde

In March 2013, the State filed 12 charges against Carde that involved 10 victims: four counts of theft in the first degree, one count of attempted theft in the first degree, two counts of theft in the second degree, two counts of securities fraud, and three counts of mortgage fraud. The State alleged that over a period of five years, Carde engaged in a pattern and practice of deception by presenting herself as a legitimate prospective buyer of a series of upscale homes, persuading sellers to allow her to move into the homes, securing lease-to-purchase agreements under false pretenses, and living in each of the homes for as long as possible while making minimal or no payments.

December 2013 Request To Appoint New Counsel

After Carde was extradited from Montana in October 2013, the court appointed public defender Jonathan Newcomb to represent her. Two months later, in December 2013, Carde asked the court to appoint new counsel. Carde asserted there was a "breakdown in communication" with Newcomb, he was difficult to reach by telephone, and matters she and counsel "discussed" about the bail hearing were "not performed." Carde said she lacked confidence in Newcomb. The court told Carde that as a general rule, public defenders are difficult to reach by telephone. The court advised Carde that if the court granted her motion, "it's not going to happen again." Because it was "sufficiently early in the case," the court granted Carde's request to appoint new counsel.

The court appointed The Defender Association (TDA) to represent Carde. After continuing the case scheduling hearing several times to allow counsel to investigate and

review thousands of pages of discovery, the court set a trial date of July 7, 2014. In June 2014, TDA attorney Timothy Johnson assumed responsibility for Carde's case. At the request of TDA, the court appointed Kristin Shotwell as co-counsel. At the request of defense counsel and over the objection of Carde, the court continued the July 2014 trial date three times. In September 2014, the court granted the defense motion to dismiss both counts of securities fraud. The State filed an amended information without the two dismissed charges.[2]

## December 2014 Motion To Discharge Counsel

On December 23, 2014, approximately six weeks before the scheduled trial date, Carde asked the court to substitute appointed counsel. Carde wanted to replace Johnson but retain Shotwell as her attorney. Johnson explained to the court that he and Shotwell had divided trial preparation by charges and Carde disagreed with the defense strategy. Johnson said Carde wanted to explore and investigate a different theory, but he and Shotwell "decided . . . to take a different course" based on a strategy that they believed was "sound" and would better serve Carde's "legal interests."

The court explained that granting the request would result in the discharge of both defense attorneys. The court offered Carde more time to weigh her options. Carde declined. Carde said she was in "total disagreement" with the defense strategy and claimed Johnson failed to obtain evidence that would help her case in a "tremendous number of ways." Carde also said Johnson met with her only 10 times, he was difficult to reach by telephone, and he had an "abrasive" style. Carde complained the defense made "[d]ecisions" without consulting her, she lacked "confidence" in

---

[2] The amended information also changed one count of theft in the second degree to theft in the first degree. Just before trial, the State dismissed one count of theft in the second degree on its own motion based on the death of the victim.

Johnson's representation, and Johnson was "undermining" and "counterproductive" to the case. However, Carde reiterated she did not want the court to replace Shotwell.

Johnson and Shotwell confirmed they had performed extensive work on the case. The attorneys had interviewed the majority of the State's approximately 25 potential witnesses, reviewed and indexed approximately 12,000 pages of discovery, and nearly completed trial preparation. Johnson said Carde's case had been his "top priority" for several months. Shotwell confirmed there had been many meetings about strategy and she and Johnson were in agreement as to trial strategy.

The court denied the motion. The court noted the ongoing concern expressed by Carde that she had already been in custody for 17 months and appointing new counsel would result in "extensive delay." The court found both attorneys were experienced and competent and the attorneys had been diligently preparing for trial. The court also noted counsel were in agreement as to the strategy with which Carde disagreed.

February 2015 Motion To Discharge Counsel

On the first day of trial, February 3, 2015, Carde renewed her request to discharge counsel. This time, Carde sought to replace both attorneys. Carde asserted the defense trial brief contained "innumerable . . . misstatements [and] misrepresentations." Carde claimed she had no opportunity to review the briefing or motions before filing. Carde also blamed her attorneys for an inadequate response to statements included in the State's trial brief that she believed were improper, including reference to a prior custodial interference charge in Minnesota and her flight from Washington after charges were filed. Carde renewed her complaint that her attorneys

4

failed to obtain relevant evidence. She claimed the attorneys' conduct left her without a defense and without "appropriate and fair representation."

The court explained the purpose of a trial brief was to provide context for the motions, the trial brief was not evidence, and it would not be considered by the jury. The court explained that decision-making authority is between a client and an attorney in a criminal case. To the extent Carde was concerned her attorneys did not adequately understand her view of the facts, the court offered to give her additional time to meet with the attorneys. Johnson informed the court that he and Shotwell had spent considerable time discussing the evidence with Carde and had done their best to incorporate her views into the defense strategy. Johnson stated that he and Shotwell had conducted a thorough independent investigation and were prepared for trial.

The court observed it would be inappropriate to invade attorney client privilege or work product to evaluate independently the manner and thoroughness of the investigation. The court denied Carde's motion. The court stated that after reading the 47-page defense trial brief and listening to defense counsel, "what I've read and seen does not equal a lack of investigation."

> [B]ased on this record, I could not conclude that somehow the Defense investigation is so lacking as to deprive Ms. Carde of a constitutional right, nor that it is the case that Defense Counsel is not zealously, ethically representing their client.

Twenty witnesses testified during the 10-day trial. The jury acquitted Carde of two counts of theft in the first degree. The jury found Carde guilty of three counts of theft in the first degree, one count of attempted theft in the first degree, and three counts of mortgage fraud. The court imposed concurrent standard range sentences for a total

5

sentence of 28 months confinement. Following a restitution hearing, the court ordered restitution for three victims.

Denial of Motions To Substitute Appointed Counsel

Carde challenges the decision to deny her motions to substitute appointed counsel claiming there was a "complete breakdown" in her communication and relationship with counsel.

The Sixth Amendment to the United States Constitution guarantees that in "all criminal prosecutions, the accused shall . . . have the assistance of counsel for [her] defense." A defendant " 'does not have an absolute, Sixth Amendment right to choose any particular advocate.' " State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004) (quoting State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997)). The essential aim of the Sixth Amendment is to guarantee an effective advocate for a criminal defendant "rather than to ensure that a defendant will inexorably be represented by the lawyer whom [s]he prefers." Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988).

A defendant who seeks to substitute appointed counsel must show good cause " 'such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.' " Varga, 151 Wn.2d at 200 (quoting Stenson, 132 Wn.2d at 734). A general loss of confidence in defense counsel by itself is not sufficient cause for substitution. Stenson, 132 Wn.2d at 733-34. The attorney and the defendant must be "so at odds as to prevent presentation of an adequate defense." Stenson, 132 Wn.2d at 734.

> A disagreement over defense theories and trial strategy does not by itself constitute an irreconcilable conflict entitling the defendant to

substitute counsel because decisions on those matters are properly entrusted to defense counsel, not the defendant.

State v. Thompson, 169 Wn. App. 436, 459, 290 P.3d 996 (2012).

Whether dissatisfaction with court-appointed counsel justifies the appointment of new counsel is a matter within the trial court's discretion. Varga, 151 Wn.2d at 200; Stenson, 132 Wn.2d at 733. A court abuses its discretion when its decision adopts a view no reasonable person would take or is based on untenable grounds or untenable reasons. State v. Sisouvanh, 175 Wn.2d 607, 623, 290 P.3d 942 (2012).

On appeal, we consider (1) the extent of any conflict between the defendant and counsel, (2) the adequacy of the trial court's inquiry into the grounds for the motion, and (3) the timeliness of the motion and potential effects on the trial schedule. State v. Cross, 156 Wn.2d 580, 607, 132 P.3d 80 (2006). In examining the extent of conflict between a defendant and her attorney, we consider the extent and nature of the breakdown in the relationship and its effect on the representation. State v. Schaller, 143 Wn. App. 258, 270, 177 P.3d 1139 (2007).

> Because the purpose of providing assistance of counsel is to ensure that defendants receive a fair trial, the appropriate inquiry necessarily must focus on the adversarial process, not only on the defendant's relationship with [her] lawyer.

Schaller, 143 Wn. App. at 270.

The court did not abuse its discretion in denying Carde's December 2014 motion to appoint new counsel. First, the record does not indicate a breakdown in communication or irreconcilable conflict affecting the adequacy of Carde's representation. Carde disagreed with counsel over strategy and evidence she believed was helpful. Defense counsel has wide latitude to control trial strategy and tactics. In

re Pers. Restraint of Stenson, 142 Wn.2d 710, 733, 16 P.3d 1 (2001). Disagreement about defense strategy does not establish a complete collapse of communication between counsel and client. See Cross, 156 Wn.2d at 606-09. Here, the record does not suggest Carde and her counsel were unable to communicate. To the contrary, Carde obviously engaged in discussions with her attorneys about strategy and the evidence. There was no basis for the court to conclude that Carde and her attorneys were "so at odds as to prevent presentation of an adequate defense." Stenson, 132 Wn.2d at 734.

Second, Carde does not challenge the adequacy of the inquiry. Nevertheless, the record reflects the court allowed Carde to explain fully the reasons for her dissatisfaction with counsel, and the trial court had before it the information necessary to assess the merits of her request. See Schaller, 143 Wn. App. at 271; Varga, 151 Wn.2d at 200-01. "[A] trial court conducts adequate inquiry by allowing the defendant and counsel to express their concerns fully." Schaller, 143 Wn. App. at 271.

Third, the timing of Carde's request and the effect on the trial schedule also supports the court's decision. Granting the request to appoint new counsel would have resulted in additional significant delay of an already long-delayed and complicated case. By December 23, 2014, six weeks before trial, Johnson and Shotwell had nearly completed preparation for trial, including review of more than 10,000 pages of discovery and interviews of approximately 20 State witnesses. Further, Carde was equivocal about further delay. While she expressed dissatisfaction with Johnson, she also complained about the considerable time she had spent in custody and raised concerns

8

about previous continuances and her right to a speedy trial. The trial court did not abuse its discretion in denying the December 2014 motion to appoint new counsel.

Nor did the trial court abuse its discretion by denying the request to appoint new counsel on the first day of trial. The court again conducted an adequate inquiry by allowing Carde and her attorneys to fully air their concerns. Carde's attorneys told the court they had discussed strategy and evidence with Carde numerous times, had attempted to incorporate her views, and were prepared to proceed to trial.

As to the nature and extent of the conflict, the only new issue Carde raised was her dissatisfaction with the defense trial brief and the response to aspects of the State's brief. The defense submitted an extensive brief that included numerous motions to exclude areas of testimony, documents, and e-mail messages. Carde did not specifically state how the brief was deficient. As to Carde's particular objections to the State's brief, her attorneys expressly addressed those concerns by moving to exclude all evidence related to the Minnesota criminal charge, Carde's alleged flight from Washington, and extradition.

While the record reflects a disagreement about strategic decisions, the record does not demonstrate a complete breakdown in communication or in the relationship or an irreconcilable conflict that affected the adequacy of representation. The court did not abuse its discretion in denying Carde's renewed motion for new appointed counsel on the first day of trial.

Restitution Order

Carde contends she is entitled to reversal of the restitution order. Carde argues the trial court violated her right to retain counsel of her choice by denying her motion to

9

continue the restitution hearing.

The restitution hearing was scheduled for September 15, 2015. At Carde's request, the court continued the hearing until September 25. On September 25, Carde requested another continuance to obtain additional information. The record shows Carde wanted additional time to obtain evidence that she was not guilty of the crimes, not to challenge the amount of restitution. The record also shows the arguments Carde intended to raise were largely the same ones the jury rejected at trial.

For instance, as to one of the victims, who was deceased by the time of trial, Carde wanted to present evidence showing the loans were personal and the victim did not intend that Carde repay his family members.

With regard to another victim, Carde intended to argue, as she had at trial, that the lease-to-purchase agreement did not obligate her to pay any rent until the sale closed. Since the sale never occurred, Carde wanted to argue she did not commit theft by failing to pay rent. Carde also maintained the victim had no right to collect rent because bankruptcy trustees controlled the property.

As to a third victim, Carde wanted to obtain additional evidence to support her argument that she lived in the home as a guest and was not obligated to pay rent. Again, the jury rejected the same argument at trial.

Carde said she needed 30 days to gather information to support her claims. The State opposed the continuance. The State argued the information Carde intended to present was not relevant to the amount of restitution. The court stated, "I think the strong presumption is there wouldn't be any additional continuance since there's been two, and at this point we'll have all the relevant information that's been alluded to." But

the court granted the motion and continued the hearing to October 22. At Carde's request and due to unspecified medical issues, the court continued the hearing to November 10.

Carde appeared at the restitution hearing on November 10 with her appointed counsel and private attorney Barry Flegenheimer. Carde asked the court to substitute private counsel for her appointed counsel. The request was contingent on granting a continuance. Flegenheimer told the court that Carde's family had "recently" secured funds to hire him and Carde had described a "number of issues" that she wanted him to investigate for the restitution hearing. Flegenheimer did not indicate how long of a continuance would be required but acknowledged he would need "some time" to prepare. Appointed counsel Johnson stated he learned about the motion only that day and did not oppose it.

Carde informed the court that "some" material she wished to present at the restitution hearing could be obtained only by means of a subpoena and her attorneys had failed to assist her in this regard. She claimed there was evidence that could "exonerate" or at least "attenuate" restitution. But Carde did not identify or describe the evidence.

The court denied the motion.

> As accurately stated earlier, this restitution matter has been continued a number of times, always at the Defense request. And I granted that so as to allow full opportunity for investigation and airing of any concerns. Moreover, and this is a very general statement, but it was my understanding that many of the arguments against the requested restitution amounts involved the very defenses that were forwarded thoroughly at trial.
> This court knows these Defense Counsel still of record to be competent and served in that capacity at trial. In other words, there's no

11

adequate showing or good cause before this Court to grant the request to substitute private counsel. Motion is denied.

Carde interrupted to argue she needed more time to show the State was relying on "fraudulent" information. The court reminded Carde it had granted a continuance six weeks earlier precisely to allow her the full opportunity to obtain the evidence necessary to challenge the amount of restitution. Yet in the six weeks since the last continuance, Carde had not obtained any new information to present to the court.

The State initially sought restitution for four victims. At the November 10 hearing, the prosecutor told the court the State was no longer requesting restitution for one of the victims. Relying on the same arguments asserted at trial, Carde's counsel objected to restitution for each of the three victims. Defense counsel asked the court to disregard the jury verdict and find "as a matter of law" that the facts did not support the requested restitution. The court imposed restitution in the amount requested by the State of approximately $220,000.

Carde claims the court's decision to deny her motion to substitute private counsel is contrary to the Washington State Supreme Court decision in State v. Hampton, 184 Wn.2d 656, 361 P.3d 734 (2015), cert. denied, 136 S. Ct 1718, 194 L. Ed. 2d 816 (2016).

A defendant who does not require appointed counsel generally has a Sixth Amendment right to counsel of choice. Hampton, 184 Wn.2d at 662. However, this right is not absolute. Hampton, 184 Wn.2d at 663. When a court considers a continuance for the purpose of allowing a defendant to retain counsel of her choice, it may balance that right against the demands of its calendar and the public's interest in the prompt and efficient administration of justice. Hampton, 184 Wn.2d at 663. " 'The

resolution of this balancing exercise falls squarely within the discretion of the trial court.' " Hampton, 184 Wn.2d at 663 (quoting State v. Aguirre, 168 Wn.2d 350, 365, 229 P.3d 669 (2010)). We review a trial court's decision to deny a continuance to determine whether the denial was " 'so arbitrary as to violate due process.' " Hampton, 184 Wn.2d at 663 (quoting Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964)).

In Hampton, the court identified 11 factors the trial court should consider in determining whether to grant a continuance to allow substitution of private counsel:

"(1)    whether the request came at a point sufficiently in advance of trial to permit the trial court to readily adjust its calendar;

(2)    the length of the continuance requested;

(3)    whether the continuance would carry the trial date beyond the period specified in the state speedy trial act;

(4)    whether the court had granted previous continuances at the defendant's request;

(5)    whether the continuance would seriously inconvenience the witnesses;

(6)    whether the continuance request was made promptly after the defendant first became aware of the grounds advanced for discharging his or her counsel;

(7)    whether the defendant's own negligence placed him or her in a situation where he or she needed a continuance to obtain new counsel;

(8)    whether the defendant had some legitimate cause for dissatisfaction with counsel, even though it fell short of likely incompetent representation;

(9)    whether there was a 'rational basis' for believing that the defendant was seeking to change counsel 'primarily for the purpose of delay';

(10)    whether the current counsel was prepared to go to trial;

(11)   whether denial of the motion was likely to result in identifiable prejudice to the defendant's case of a material or substantial nature."

Hampton, 184 Wn.2d at 669-70 (quoting 3 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 11.4(c), at 718-20 (3d ed. 2007)).

The court acknowledged that "these situations are highly fact dependent" and the court is not required to apply any mechanical test. Hampton, 361 P.3d at 669. Further, "[n]ot all factors will be present in all cases, and thus a trial court need not evaluate every factor in every case." Hampton, 184 Wn.2d at 670.

Although the Supreme Court issued its decision in Hampton nine days after the trial court ruled on Carde's request for a continuance, the record shows the trial court considered many of the 11 factors set forth in Hampton, and virtually all of the factors support the trial court's decision to deny Carde's last-minute request for another continuance.

At Carde's request, the court had granted three previous continuances. Carde's request for a fourth continuance on the date of the restitution hearing was untimely. On the day of the restitution hearing, Carde's appointed counsel Johnson was prepared to proceed. Although neither Carde nor retained counsel Flegenheimer stated the exact length of the continuance needed, the restitution hearing had already been continued beyond the 180-day statutory deadline and granting Carde's request would have resulted in substantial further delay.

Carde expressed no legitimate cause for dissatisfaction with appointed counsel. Carde cited counsel's unwillingness to obtain subpoenas as the reason to retain new counsel. But as the trial court observed, Carde was seeking to present evidence

relevant to arguments the jury rejected at trial and not relevant to the amount of restitution. Accordingly, denial of Carde's motion resulted in no identifiable prejudice of a material or substantial nature.

Carde also offers no explanation as to why she did not obtain documentation or information despite the previous six-week continuance. And according to Carde, only some documents she wanted to obtain required a subpoena.

Consistent with the factors identified in Hampton, the trial court did not abuse its discretion in denying Carde's motion for a continuance of the restitution hearing to allow newly retained counsel to represent her. The denial of Carde's request was not arbitrary and did not violate her right to due process.

Carde also contends that under the Sixth Amendment to the United States Constitution and article I, section 21 of the Washington State Constitution, she is entitled to a jury determination of the amount of restitution. We disagree. In State v. Kinneman, 155 Wn.2d 272, 282, 119 P.3d 350 (2005), the Washington Supreme Court held, "There is no right to a jury trial to determine facts on which restitution is based under RCW 9.94A.753."

Carde also characterizes restitution as "damages" and claims she is entitled to a jury determination under Sofie v. Fibreboard Corp., 112 Wn.2d. 636, 771 P.2d 711, 780 P.2d 260 (1989). But Sofie is inapposite.[3]

Statement of Additional Grounds

Carde filed a statement of additional grounds challenging the trial court decisions denying her requests for new appointed counsel. Because appellate counsel's briefing

---

[3] No authority supports Carde's argument that the analysis in Sofie applies in a criminal setting to the determination of restitution.

15

adequately addresses this argument, we need not address it. <u>See</u> <u>State v. Gomez</u>, 152 Wn. App. 751, 754, 217 P.3d 391 (2009). To the extent she also alleges fraud and unethical conduct on the part of the prosecutor or ineffective assistance of counsel, her claims appear to involve matters outside the trial record. Accordingly, we cannot consider them on direct appeal. <u>See</u> <u>State v. McFarland</u>, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

We affirm the judgment and sentence and the order of restitution.[4]

WE CONCUR:

---

[4] Carde asks this court to deny appellate costs. After considering the nonexclusive factors in <u>State v. Sinclair</u>, 192 Wn. App. 380, 393, 367 P.3d 612 (2016), we exercise our discretion to not award costs.