IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  35381-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EDWARD LANE HART, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Edward Hart appeals from convictions for second degree child rape and second degree child molestation, primarily arguing that the trial court erred in disqualifying his retained attorney.  The court did not err by disqualifying an attorney who was a factual witness to the victim's report of the crimes.  We affirm the convictions and remand to modify the judgment and sentence.

FACTS

Mr. Hart was convicted of sexually abusing his wife's daughter, A.C.  At age 14, A.C. reported to her mother that Mr. Hart had abused her over the previous nine years.  Her mother did not believe the accusation, a fact that seriously strained the mother-

daughter relationship. A.C. then reported the abuse to Mr. Hart's family and to his attorney and personal friend, Julie Anderson. Ms. Anderson did not believe the accusation and discussed it with A.C.'s mother. Since neither woman believed A.C., neither one reported to the police.

At age 16, A.C. performed occasional office work for attorney Anderson. That fall, she hand wrote a recantation on a declaration form used by the Anderson Law Office. Ex. 3. A.C. would later testify that her mother sent her to Ms. Anderson, who then had her write the note. In their testimony, both Anderson and the mother denied involvement.

When A.C. was 25, her mother's marriage to Mr. Hart was dissolved. After the dissolution was final, A.C. and her mother reported the abuse to law enforcement. Both women described a birthmark on Mr. Hart's penis. The investigating detective obtained a search warrant authorizing him to photograph the birthmark. The detective reported seeing a mark, but it was indistinct in the detective's photos.

Eventually, the prosecutor filed two counts of first degree child rape and two counts of second degree child rape against Mr. Hart. Ms. Anderson appeared as retained counsel for Mr. Hart. She moved to dismiss the charges on statute of limitations grounds. The trial court denied the motion.

During defense interviews of A.C. and her mother, the prosecution learned of Ms. Anderson's relationship to the case, including the fact that A.C. had disclosed the abuse

2

to Ms. Anderson years earlier. The State then moved to disqualify Ms. Anderson on the

basis that she was a potential witness in the case. The defense opposed the motion,

arguing that there was no attorney-client relationship between Anderson and A.C., and

that the only issues she would testify about were uncontested matters.

The trial court granted the motion, stating:

> I am going to grant the State's motion to disqualify you, Ms. Anderson, from this case, and my concern is very much . . . . this could be a real situation of a he said/she said swearing match where credibility is going to be of the utmost importance for the jury to evaluate because this long after the allegations, there's not going to be any other kind of physical evidence.
> Your declaration indicates that you had conversations with Mr. Hart, with Ms. Stewart, the mother, and with the alleged victim back at this time period when this was first brought to light. Further, I don't know if—I guess I wouldn't rule out the possibility that the State could end up calling you as a witness, depending on what the nature of the defense is, as a rebuttal witness, but I think that Mr. Hart would be deprived potentially of a witness that might be favorable for him in terms of you and your knowledge of the event back many years ago if you are acting as his attorney in this case.
> If Mr. Hart is unable to hire another private attorney, he can ask the Court to appoint one for him. Your implication of your statement is that many people feel that getting a public defender isn't as good as getting a private attorney. I just don't think that that's really true here, at least in Chelan County, where, you know, we have, from the Court's viewpoint, a consistently high level of representation and good outcomes at trial, just had one last week on a high profile case where the defense—although the gentleman was convicted of a gross misdemeanor, it was far less than the original charge. So I understand Mr. Hart's desire to have you continue in this case, but it seems to the Court that you are potentially a witness in this case and so I'm going to grant the motion to disqualify you.

Supplemental Report of Proceedings at 10-11.

Because Mr. Hart was unable to retain a new attorney, the court appointed counsel for him. The State called Ms. Anderson in its case-in-chief. She testified to her long-term relationship with Mr. Hart, A.C., and A.C.'s mother. Anderson denied involvement in the recantation note and did not know why it was on her law firm's form. She also told the jury that A.C. had reported the abuse to her, but that, like the child's mother, she did not believe the allegation.

The State amended charges during trial to one count of second degree child rape and one count of second degree child molestation prior to resting. The amended charges were alleged to have occurred between January 1, 2002, and December 31, 2004. The only witness called by the defense was an investigator for the public defender's office. He had taken pictures that morning of the defendant's penis and presented the photos to the jury over the State's objection about untimely discovery. When cross-examining the investigator, the prosecutor stated: "It's amazing, the advances in plastic surgery these days, isn't it?" Report of Proceedings (RP) at 485. The court sustained the defense objection and struck the comment from the record.

During closing argument, the defense argued that A.C. was not credible and cited the photographic proof that there was no mark on his penis. In rebuttal, the prosecutor pointed out that Mr. Hart had 13 months to have the mark removed and only that very day had he taken pictures to show that there was no mole. She then argued that there had been "amazing advances in plastic surgery these days." The trial court sustained an

4

objection to the argument.  She then simply noted for the jury, without objection, that Mr.

Hart had 13 months to remove the mark.  RP at 533-534.

The jury convicted Mr. Hart as charged.  After a timely appeal to this court, a

panel heard argument on the case.

ANALYSIS

This appeal raises arguments concerning the removal of Ms. Anderson and the

prosecutor's plastic surgery remarks.  It also raises three arguments concerning aspects of

the judgment and sentence.  We address first the removal of counsel argument before

turning to the prosecutor's comments.  We will then jointly consider the challenges to the

judgment and sentence.

*Removal of Counsel*

Mr. Hart initially argues that the trial court denied him his counsel of choice when

Ms. Anderson was removed in light of her role as a witness.  The trial court did not err in

entering the removal order.

The decision whether or not to disqualify an attorney is reviewed for abuse of

discretion.  *Pub. Util. Dist. No. 1 of Klickitat County v. Int'l Ins. Co.*, 124 Wn.2d 789,

812, 881 P.2d 1020 (1994);  *Am. States Ins. Co. ex rel. Kommavongsa v. Nammathao*,

153 Wn. App. 461, 466, 220 P.3d 1283 (2009).  Discretion is abused when it is exercised

on untenable grounds or for untenable reasons.  *State ex rel. Carroll v. Junker*, 79 Wn.2d

12, 26, 482 P.2d 775 (1971).  Discretion also is abused when it is exercised contrary to law.  *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).

The Sixth Amendment guarantee of the right to counsel includes a criminal defendant's right to select counsel of one's choice.  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146-148, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006).  However, "even for defendants with private attorneys, the right to counsel of choice is not absolute."  *State v. Hampton*, 184 Wn.2d 656, 663, 361 P.3d 734 (2015).  *Gonzalez-Lopez* noted that trial courts have "wide latitude" in balancing the right to counsel of choice "against the demands of its calendar."  548 U.S. at 152.  *Hampton* acknowledged this balancing as a discretionary exercise for the trial court.  184 Wn.2d at 663 (quoting *State v. Aguirre*, 168 Wn.2d 350, 365, 229 P.3d 669 (2010)).  Courts are reluctant to disqualify a lawyer absent compelling circumstances.  *Kommavongsa*, 153 Wn. App. at 466.  A trial court should enter findings concerning (1) the materiality of the testimony, (2) the necessity for the testimony, and (3) any prejudice to the client.  *State v. Sanchez*, 171 Wn. App. 518, 545, 288 P.3d 351 (2012).

RPC 3.7 states the lawyer as witness rule.  The section relevant to this case provides:

> **(a)** A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> . . . .
> (3) disqualification of the lawyer would work substantial hardship on the client.

6

The trial court concluded that defense counsel was a possible witness for the prosecution and also could be an important witness for the defense in a case that likely would turn on witness credibility.[1] These conclusions were certainly tenable bases for determining that counsel likely would be a necessary witness and could no longer act as an advocate. RPC 3.7(a). They also satisfy the first two questions of the *Sanchez* test—the testimony was material and necessary. The remaining question is whether disqualification would work a substantial hardship on Mr. Hart. RPC 3.7(a)(3); *Sanchez*, 171 Wn. App. at 545.

The only basis for claiming hardship was that Mr. Hart could no longer afford an attorney and would need to have appointed counsel. That "hardship" was easily remedied by the trial court's appointment of experienced counsel to represent Mr. Hart at public expense. The trial court also rejected the implied argument that appointed counsel were not as capable as retained attorneys, pointing to recent successes by local public defenders. This unsupported allegation simply does not establish substantial hardship.

---

[1] In light of the importance at trial of the testimony concerning the recanted statement written on her firm's pleading paper and the victim's allegation that Ms. Anderson was behind it, hindsight demonstrates that the trial court's observation was correct.

The trial court had very tenable bases for removing Ms. Anderson. Her testimony was necessary for both sides. The court did not abuse its discretion by disqualifying Mr. Hart's initial counsel of choice.

*Prosecutorial Misconduct*

Mr. Hart next argues that the prosecutor engaged in egregious misconduct requiring a new trial. However, we conclude that the trial court properly addressed the prosecutor's statements.

The standards governing this issue are well settled. The appellant bears the burden of demonstrating prosecutorial misconduct on appeal and must establish that the conduct was both improper and prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). Prejudice occurs where there is a substantial likelihood that the misconduct affected the jury's verdict. *Id.* at 718-719. The allegedly improper statements should be viewed within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions. *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997).

Reversal is not required where the alleged error could have been obviated by a curative instruction. *State v. Gentry*, 125 Wn.2d 570, 596, 888 P.2d 1105 (1995). The failure to object constitutes a waiver unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Id.*; *State v. Swan*, 114 Wn.2d 613, 665, 790 P.2d 610

(1990); *State v. Belgarde*, 110 Wn.2d 504, 507, 755 P.2d 174 (1988).  Finally, a

prosecutor has "wide latitude" in arguing inferences from the evidence presented.

*Stenson*, 132 Wn.2d at 727.

The court sustained defense objections both when the prosecutor questioned the

defense investigator about the "amazing advances" in plastic surgery and repeated the

comment in closing argument.  In the first instance, the trial court also struck the

comment from the record at defense request.  The court also gave the standard jury

instruction that the statements by the attorneys were not evidence and that only evidence

that was admitted at trial could be considered.  Clerk's Papers at 152-153.  The first

question was objectionable because no evidence about any "amazing advances" had been

admitted at trial and the defense investigator was unlikely to be a competent witness on

the topic.  The second comment was objectionable for the reason that no evidence about

the "amazing advances" had been presented.  Since the two remarks were not evidence

and the jury was instructed not to consider the comments of the attorneys, it is not

apparent that anything more needed to be done.

Mr. Hart nonetheless argues that the two remarks were such egregious misconduct

that only a new trial can remedy the situation.  We disagree.  The relevance of the mole

was clear, although the inference to be drawn was not.  Three witnesses testified that one

was present in the past, while one witness testified that no mole currently existed.  While

the jurors could infer that one or more witnesses were incorrect in their testimony, it was

equally likely that all were correctly reporting information that they had experienced at different times over the preceding decades. It was not improper for the prosecutor to suggest that there had been a recent change, possibly effectuated by plastic surgery, that explained the conflict in the testimony. The phrasing of the remarks was objectionable because there was no evidence about any advances in plastic surgery. The possibility of plastic surgery as an explanation for the differences was not necessarily improper.

Under these circumstances, there was not a substantial likelihood that the two comments affected the jury's verdict. Accordingly, Mr. Hart has not sustained his burden of proving misconduct deprived him of a fair trial.

*Judgment and Sentence*

Mr. Hart presents three challenges to the judgment and sentence form. We jointly consider those contentions.

The State concedes two of the challenges and we accept one of those concessions. First, the parties correctly note that the judgment and sentence incorrectly states that Mr. Hart was subject to indeterminate sentencing under former RCW 9.94A.712, a provision that was recodified at RCW 9.94A.507 by Laws of 2008, ch. 231, § 56. The judgment and sentence should be modified to reflect the proper statute.

Although the State concedes that the prohibition on Mr. Hart possessing sexually explicit materials is improper, we question whether that concession is correct in light of *State v. Nguyen*, No. 94883-6 (Wash. Sept. 13, 2018), http://www.courts.wa.gov/opinions

10

/pdf/948836.pdf, a decision issued immediately after we heard argument in this case. Because the case is being remanded on other issues and the parties have not briefed *Nguyen*, we leave this issue for the trial judge on remand.

Finally, the parties do disagree about whether Mr. Hart was properly subject to the community protection zone exclusion of current RCW 9.94A.703(1)(c). That provision was originally enacted in 2005. *See* LAWS OF 2005, ch. 436, § 1. Mr. Hart was convicted for crimes committed between 2002 and 2004. The law in effect at the time the crime was committed governs sentencing in Washington. RCW 9.94A.345. The community protection zone was not enacted until a year after Mr. Hart committed these offenses. It was improper to sentence in accordance with that statute.

Nonetheless, trial judges have long held the power to impose no-contact and geographic restrictions as part of a judgment and sentence. *See generally* former RCW 9.94A.120(7) (1984); DAVID BOERNER, SENTENCING IN WASHINGTON: COMMUNITY SUPERVISION § 4.4, at 4-4 (1985). At the time of these offenses, the restrictions were found in former RCW 9.94A.700(5) (2000).

Accordingly, we reverse the two noted sentencing conditions. The trial court is free to again consider any restrictions on Mr. Hart's post-release living conditions in accordance with the law in effect at the time of these crimes. Former RCW 9.94A.700(5).

11

The convictions are affirmed. The noted sentence conditions are reversed and the matter remanded for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Siddoway, J.